**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 29, 2015**

# In the Court of Appeals of Georgia

A15A0968. SALAS et al. v. JP MORGAN CHASE BANK, N. A.,
et al.

RAY, Judge.

Maria Molina Salas and Ignacio Molina Salas[1] as trustee of the Salas Family
Trust (collectively, the "Plaintiffs") filed suit against, inter alia, JP Morgan Chase
Bank, N. A. ("Chase Bank") and the Federal National Mortgage Association ("Fannie
Mae") seeking to stop foreclosure proceedings initiated against Maria's property.
Chase Bank then filed an answer and counterclaimed for judgment under a
promissory note, reformation of a security deed, and declaratory judgment or, in the
alternative, equitable subrogation. Fannie Mae also filed an answer. Chase Bank and

---

[1] Several parties in this case have the last name "Salas." Accordingly, for
clarity's sake, we shall refer to Maria Molina Salas as "Maria" and Yvette Salas as
"Yvette."

Fannie Mae moved for summary judgment on all of the Plaintiffs' claims and on the pending counterclaims. After a hearing, the trial court granted summary judgment to Chase Bank and Fannie Mae on all of the Plaintiff's claims. The trial court also entered judgment in favor of Chase Bank on each of its counterclaims.[2]

Plaintiffs appeal from the trial court's grant of Chase Bank's counterclaims, arguing that the trial court erred in considering an affidavit that the Plaintiffs contend was inadmissable and in granting summary judgment on Chase Bank's counterclaims for reformation and declaratory judgment. Plaintiffs also allege that the trial court erred when it awarded a monetary judgment in favor of Chase Bank on the suit on a note counterclaim because allegedly there was no admissible evidence in support of its damage calculations or attorney fees related to this counterclaim.

For the following reasons, we affirm the trial court's grant of summary judgment to Chase Bank on its counterclaim to reform the Chase Bank Security Deed and reverse the trial court's grant of summary judgment as to Chase Bank's counterclaim for declaratory judgment. We also reverse the award of damages to

_____

[2] It appears from the trial court's order that it did not rule upon the alternative claim for equitable subrogation because it granted summary judgment on Chase Bank's counterclaim for declaratory judgment.

2

Chase Bank on its counterclaim for suit on a note and remand the case to the trial court for further proceedings on that issue.

"On appeal from a grant of summary judgment, this Court conducts a de novo review of the record, construing the evidence and all inferences therefrom most favorably to the nonmoving party." (Citation omitted.) *American Manufacturers Mut. Ins. Co. v. E A Technical Svcs, Inc.*, 270 Ga. App. 883, 883 (608 SE2d 275) (2004).

The evidence presented at the summary judgment proceeding[3] shows the following. On May 21, 2001, Yvette Salas purchased property in Duluth via a Special Limited Warranty Deed (the "Property"). The Property was described as being Lots 6, 7, 8, and 9 of Unit 1, Section 2, Block E of the Berkeley Hills Subdivision in Gwinnett County (collectively, the "Lots"), all of which have the same street address. Lot 9 is identified by records in the Gwinnett County Georgia Tax Assessor's Office as an improved lot. Lots 6, 7, and 8 are identified as unimproved lots. To finance the purchase, Yvette obtained a purchase money loan from American Summit Mortgage

---

[3] We remind the parties and the bar that the Rules of the Court of Appeals require that record and transcript citations must be to the volume or part of the record or transcript and the page numbers that appear on the appellate records or transcript as sent from the court below. See Rule 25 (a) (1). This means that parties should not cite to the internal page number of a document included in the record, such as a deposition or affidavit, but rather to the record page number.

3

Corporation for $165,000 and executed a security deed in favor of that institution. The purchase money security deed was recorded on June 12, 2001.

On May 18, 2001, Yvette conveyed the Lots to herself and Maria pursuant to a quitclaim deed (the "First Quitclaim Deed"). The First Quitclaim Deed was not recorded until May 31, 2002.

On July 3, 2002, Yvette conveyed her interest in the Lots to Maria via quitclaim deed (the "Second Quitclaim Deed"). The Second Quitclaim Deed was recorded on July 12, 2002. This conveyance was for the purpose of a refinance transaction in which Maria obtained a $240,000 loan from America's Wholesale Lender ("AWL") and granted a security deed in favor of AWL on July 12, 2002 (the "AWL Security Deed"). As part of the refinance transaction, funds from the proceeds of the AWL loan went to pay off the original purchase money loan under Yvette's name. The original purchase money security deed was accordingly marked satisfied and cancelled on record on December 2, 2002.

After executing the AWL Security Deed and obtaining a payoff of the original purchase money security deed, Maria conveyed the Lots back to Yvette and herself as joint tenants with rights of survivorship pursuant to a quitclaim deed recorded on July 12, 2002 (the "Third Quitclaim Deed").

On February 14, 2003, Maria obtained a revolving line of credit against the Lots from SunTrust Bank with a maximum principal balance of $56,200. On that same date, Maria executed a security deed in favor of SunTrust conveying a junior lien against her interest in the Lots to SunTrust (the "HELOC Security Deed"). The HELOC Security Deed was not recorded until January 10, 2005.

Prior to the recording of the HELOC Security Deed, Yvette and Maria executed a quitclaim deed conveying all interest in the Lots to Maria on May 18, 2003 (the "Fourth Quitclaim Deed"). The Fourth Quitclaim deed was recorded on June 18, 2003.

On August 1, 2003, a quitclaim deed dated September 18, 2002, was recorded, in which Yvette purported to convey her interest in the Lots to David Lipps (the "Lipps Quitclaim Deed"). The Lipps Quitclaim Deed was recorded after the Fourth Quitclaim deed.

On May 24, 2007, Maria entered into a refinance transaction in which she obtained a loan from Chase Bank in the amount of $304,800 and executed a promissory note as evidence of the loan. As part of the transaction, Chase Bank paid the outstanding balances owed by Maria on the HELOC and AWL loans. At the

5

closing, Maria executed a security deed in favor Chase Bank (the "Chase Bank Security Deed").

The Chase Bank Security Deed describes the property conveyed as "Parcel ID number 6228041," which corresponds to Lot 9. However, the legal description of the property attached to the Chase Bank Security Deed describes the secured property as Lot 6.

Maria defaulted on the Chase Bank loan, and the loan balance was accelerated. As a result of the default, Chase Bank referred the property for non-judicial foreclosure, but no foreclosure sale was held because the Plaintiffs filed the present lawsuit seeking, inter alia, an injunction against foreclosure, a declaratory judgment that the defendants had no enforceable interest in the property, and to quiet title. Chase Bank and Fannie Mae each filed an answer to the complaint. Chase Bank also filed a counterclaim seeking, inter alia, a judgment on the note, reformation of the legal description of the property secured by the Chase Bank Security Deed, and a declaratory judgment to establish the validity and priority of the Chase Bank Security Deed against all Lots.

6

After a hearing, the trial court granted summary judgment in favor of Fannie Mae and Chase Bank and granted relief to Chase Bank on its counterclaims. Plaintiffs appeal from that order.

1. Plaintiffs allege that the trial court erred in granting Chase Bank's counterclaim for a declaratory judgment that the Chase Bank Security Deed, as reformed, is a "first priority lien wholly encumbering the Property in favor of [Chase Bank] and its successors and assigns and that [Chase Bank] may non-judically foreclose its interest in the Property in its entirety[.]" Plaintiffs allege that this ruling was in error because David Lipps holds a 50 percent intervening interest in the Lots and was never made a party to the proceedings. For the following reasons, we reverse this ruling.

As noted above, Yvette allegedly conveyed her interest in the Lots to David Lipps on September 18, 2002, pursuant to a quitclaim deed. Yvette then conveyed that same interest in the Lots to Maria in the Fourth Quitclaim Deed on May 18, 2003. The Fourth Quitclaim Deed was recorded on June 18, 2003. However, the Lipps Quitclaim Deed was not recorded until August 1, 2003.

Chase Bank correctly notes that the Lipps Quitclaim Deed was not recorded until after Maria recorded the Fourth Quitclaim deed. OCGA § 9-11-19 (a) (2) (A)

7

mandates joinder of persons where the indispensable party "claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may . . . [a]s a practical matter impair or impeded his ability to protect that interest[.]" Here, Lipps allegedly had an interest conveyed to him by Yvette in the

Lipps Quitclaim Deed.[4] Although Chase Bank correctly asserts that the deed recorded first has priority in a contest between deeds conveying the same property, such is true only when the deed is "taken without notice to the buyer and with consideration to the seller." (Citation omitted.) *Thomas v. Henry County Water and Sewerage Auth.*, 317 Ga. App. 258, 261 (1) (731 SE2d 66) (2012). See also OCGA § 44-2-1 (b) ("[a] deed may be recorded at any time; but a prior unrecorded deed loses its priority over a subsequent recorded deed from the same vendor when the purchaser takes such deed without notice of the existence of the prior deed"). Here, the failure to join Lipps as an indispensable party prevents him from presenting any argument that he should not lose priority for any reason, including the possibility that Maria took the Fourth Quitclaim Deed with notice of the existence of his prior unrecorded deed. See *Hall v. Oliver*, 251 Ga. App. 122, 122-123 (1) (553 SE2d 656) (2001) (Under OCGA § 9-11-19 (a) (2) (A), the determination of whether a party is necessary to an action is based on "not whether relief has been requested against the other party, but whether

---

[4] We note that we herein make no decision as to whether the Lipps Quitclaim Deed is valid, and if it is, whether it was really executed and delivered on the date it indicates. We take such representations as being true for purposes of this appeal, as we must. At the same time, it is curious that the deed indicates there was no transfer tax paid upon the transfer and that it was not recorded for 11 months after its alleged execution.

9

the other party has or claims an interest relating to the subject of the action and is so situated that the disposition of the action in [his] absence may as a practical matter impair or impede [his] interest") (footnote omitted). Accordingly, we reverse the portion of the trial court's order ruling on Chase Bank's motion for a declaratory judgment, returning this case to trial to allow Lipps to be added as a party.

2. In two related enumerations, the Plaintiffs argue that the trial court's grant of summary judgment in favor of Chase Bank on the reformation counterclaim was in error because the evidence supporting the claim, the affidavit of Jeffrey A. Javorsky and accompanying exhibits, should have been deemed inadmissible. We disagree.

Chase Bank submitted Javorksy's affidavit in conjunction with its motion for summary judgment. In his affidavit, Javorsky sets out his role and personal access to and knowledge of the records created and maintained by Chase Bank in the ordinary course of business. He then references and authenticates various bank documents, including the security deed Maria executed in favor of Chase Bank. He notes that Chase Bank extended the loan amount to Maria "upon the express understanding that [Chase Bank] was gaining a first-priority security interest in the Property," and that the security deed was intended to encumber Lot 9 of the Property (a residential lot

10

with a two-story house built upon it) and not Lot 6 (which was a residential unbuildable lot). Based upon his review of the loan, Javorsky stated in his affidavit that Chase Bank would not have issued the loan if it expected to receive a residential, unbuildable lot as security for repayment of the indebtedness. He also stated that Maria executed a document titled "Document Correction Agreement" wherein she agreed that "If any document . . . inaccurately reflects the true and correct terms and conditions of the Loan, upon request of the Lender, Borrower(s) will comply with Lender's request to execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary to . . . correct" the document. He went on to state that the bank's records reflect several documents executed by Maria that reference the fact that the secured property was a residential parcel with a house built on it, including a property appraisal. Notably, a scrivener's affidavit was prepared by the closing attorney asserting that the security deed "should have encumbered Lot 9 instead of Lot 6." The Javorsky affidavit further stated that Maria was in default on the loan and that the scheduled foreclosure sale did not occur.

(a) Plaintiffs first allege that the Javorsky affidavit should have been deemed inadmissible because Chase Bank did not comply with the notice requirement of OCGA § 24-9-902 (11). We are unpersuaded.

11

A writing will generally not be admitted into evidence "unless the offering party tenders proof of the authenticity or genuineness of the writing." (Citation and punctuation omitted.) *Jaycee Atlanta Dev. LLC v. Providence Bank*, 330 Ga. App. 322, 325 (2) (765 SE2d 536) (2014). However, the new Georgia Evidence code specifies a number of documents that are self-authenticating and do not require "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility under OCGA § 24-9-902," including

> [t]he original or duplicate of a domestic record of regularly conducted activity that would be admissible under paragraph (6) of Code Section 24-8-803 if accompanied by a written declaration of its custodian or other qualified person certifying that the record: (A) Was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of such matters; (B) Was kept in the course of the regularly conducted activity; and (C) Was made by the regularly conducted activity as a regular practice.

OCGA § 24-9-902 (11). This subsection also requires a party intending to offer such records into evidence to "provide written notice of such intention to all adverse parties and shall make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge such record and declaration[.]" Id.

12

Here, Chase Bank does not dispute that it failed to notify the Plaintiffs in writing that it intended to introduce the Javorsky affidavit or the accompanying bank records as self-authenticating exhibits pursuant to OCGA § 24-9-902 (11). However, the Plaintiffs received the documents as part of Chase Bank's motion for summary judgment and had the opportunity to respond to the admissibility of such records both in their response brief and during oral argument. Plaintiffs argued before the trial court that they were unsuccessful in seeking to depose Javorsky and that Chase Bank did not respond to its notice to produce corporate resolution or meeting minutes identifying his job title within the bank. They informed the Court that they "intend[ed] to file a motion on that issue[,]" but no motion was ever filed. Accordingly, Plaintiffs were clearly on notice that Chase Bank sought to introduce the bank records as business records under OCGA § 24-8-803 (6) and that the documents were intended to qualify as self-authenticating under OCGA § 24-9-902 (11).

Because OCGA § 24-9-902 mirrors the Federal Rules of Evidence, we will look to the advisory notes and federal case law interpreting the Federal Rules of Evidence for guidance. See, e. g., *Hayek v. Chastain Park Condo. Assn., Inc.*, 329 Ga. App. 164, 167 (1), n. 2 (764 SE2d 183) (2014). Fed. R. Evid. 902 (11)'s notice

13

requirement was "intended to give the opponent of the evidence a full opportunity to test the adequacy of the foundation set forth in the declaration." Fed. R. Evid. 902 advisory committee's note (2000 Amendment). See, e. g., *U. S. v. Komasa*, 767 F.3d 151, 155 (2d. Cir. 2014) (although plaintiff did not comply with the notice requirements of Fed. R. Evid. 902 (11), the requirement was excused where the defendants clearly had actual notice of the government's intent to introduce documents as self-authenticating copies of the records prior to trial, and the defendants admitted they had an opportunity to challenge authenticating certificates). We find that the intended notice was provided in this case.

Further, we find that Javorsky has sufficiently authenticated the Chase Bank records he relied upon and attached to his affidavit.[5] Under Georgia's new Evidence Code, business records may be admissible as a hearsay exception:

> Unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness . . . , a memorandum, report, record, or data compilation, in any form . . . if (A) made at or near the time of the described acts, events, conditions, opinions, or diagnoses;

---

[5] As noted in Division 4 of this opinion, infra, the affidavit did erroneously include a document from another bank's loan as Exhibit 16. However, that document is not relied upon as evidence supporting Chase Bank's counterclaim for reformation of the security deed, and Plaintiffs do not cite this error as an indication that the Chase Bank documents attached to the affidavit are untrustworthy.

14

(B) made by, or from information transmitted by, a person with personal knowledge and a business duty to report; (C) kept in the course of a regularly conducted business activity; and (D) it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or by certification. . . .

OCGA § 24-8-803 (6). A review of the affidavit reveals that Javorsky complied with these requirements.

(b) Plaintiffs next call into question the trustworthiness of the business records relied on by Javorsky, arguing that his LinkedIn.com profile does not list him as having the same job title at Chase Bank that his affidavit does. However, courts "that have examined the trustworthiness prong of the business record exception to the hearsay rule have noted that, generally, bank records are particularly suitable for admission under [OCGA § 24-8-803 (6)] in light of the fastidious nature of record keeping in financial institutions, which is often required by governmental regulations." (Citations and punctuation omitted.) *Ware v. Multibank 2009-1 RES-ADC Venture, LLC*, 327 Ga. App. 245, 249 (2) (758 SE2d 145) (2014). Here, the Plaintiffs do not challenge that Maria signed the Chase Bank Security Deed and accompanying closing documents. "It is within the trial court's discretion to

15

determine whether a proper foundation was laid for application of the business records exception to a particular document." (Citation and punctuation omitted.) *Ciras, LLC v. Hydrajet Technology, LLC*, __ Ga. App. __ (773 SE2d 800, 803) (2015). We find that the trial court did not abuse its discretion in admitting the routine bank records prepared by Chase Bank and admitted via the Javorsky affidavit.

3. Plaintiffs next contend that the trial court erred in granting summary judgment in favor of Chase Bank on its counterclaim seeking reformation of the Chase Bank Security Deed because, even assuming that the above-referenced documents were admissible, there still was inadequate evidence to support the award of summary judgment. We disagree.

A written instrument can be reformed under equity if there is a mutual mistake between the parties. "A 'mutual mistake' in an action for reformation means one in which both parties had agreed on the terms of the contract, but by mistake of the scrivener the true terms of the agreement were not set forth." (Punctuation and footnote omitted.) *First Nat. Bank of Polk County v. Carr*, 260 Ga. App. 439, 440 (1) (579 SE2d 863) (2003). The legal description of the property to be secured by the Chase Bank Security Deed describes Lot 6 as the encumbered property.

16

Javorsky's affidavit provided evidence that the parties intended to use Lot 9, which contained the residential building, as security for the loan to Chase Bank as opposed to the undeveloped Lot 6. This evidence included the following documents signed as part of the loan closing: the "As Is" statement signed by Maria in conjunction with the loan closing stating that the encumbered property is a "residential property[;]" the Occupancy Affidavit stating that "[t]he property for which this mortgage is being obtained is being purchased/refinanced *as a primary home* and I/we *intend to occupy the aforementioned property*[;]" a flood hazard notice in which Maria agreed and acknowledged that "[t]he building or mobile home securing the loan for which you applied is . . . located in an area with special flood hazards[;]" and that Maria identified the property to be encumbered as a primary residence on the loan application. The bank records also include a Uniform Residential Appraisal Report identifying the property given as collateral for the loan as being 1.08 acres with a 2-story brick home built upon it. Further, the attorney who conducted the closing transaction executed a scrivener's affidavit asserting that the security deed should have encumbered Lot 9 instead of Lot 6.

Plaintiffs argue that these documents did not prove mutual mistake because they show only that the closing attorney made a mistake, not Maria. We are

unpersuaded. The above evidence shows that Maria executed several documents exhibiting her intent to encumber the lot that included her residence, not an undeveloped property. She has pointed us to no evidence indicating otherwise. Accordingly, we find that summary judgment in favor Chase Bank on this ground was not in error. See *Aames Funding Corp. v. Henderson*, 275 Ga. App. 323, 323-325 (620 SE2d 503) (2005) (trial court erred in not granting summary judgment to lender to reform security deed to expand legal description to include three additional lots other than those described in security deed when evidence presented showed that both parties intended to encumber all four lots). We find no error.

4. At the motion for summary judgment hearing, Plaintiffs consented to the trial court granting summary judgment to Chase Bank on its suit on a note counterclaim. In its order, the trial court granted summary judgment in favor of Chase Bank on its suit under the promissory note and awarded damages to Chase Bank in the amount of $507,555.97, which included $304,800 in unpaid principal, $116,349.07 in unpaid interest, $30,588.23 in escrow advances, $84.14 in late charges, $13,594.62 in corporate advances, and $42,139.91 in statutory attorney fees under OCGA § 13-1-11. It also held that additional interest shall accrue on the principal balance at the rate of $55.32 per day. Plaintiffs contend that although they consented to *liability* for this

18

cause of action, they did not consent to the *amount of damages* awarded and that the damages awarded were not proven to a reasonable certainty by competent evidence in the record. We agree that an issue of fact remains as to the amount.[6]

"Where a party sues for damages, it has the burden of proof of showing the amount of loss in a manner in which the trial judge can calculate the amount of the loss with a reasonable degree of certainty." (Citation and punctuation omitted.) *Nelson v. Hamilton State Bank*, 331 Ga. App. 419, 421 (2) (771 SE2d 113) (2015). See also *Lockwood v. Fed. Deposit Ins. Corp.*, 330 Ga. App. 513, 517 (2) (b) (767 SE2d 829) (2014) ("[I] an action on a promissory note, the plaintiff has the burden of proving that the defendant is indebted to him and in a definite and correct amount") (punctuation and footnote omitted). Thus, a party seeking judgment on a suit on a note "is not entitled to summary judgment as to the amount of the debt where it offers no testimony or any documentation explaining its method of calculating the specific amounts sought such that the trial court is unable to confirm the [party's] calculation of the purported damages." (Citations omitted.) *Nelson*, supra at 422 (2).

---

[6] We do not agree with Chase Bank's contention that the Plaintiffs waived any objection to the amount of damages on appeal. Plaintiffs arguably objected to the amount of proposed damages in their response to Chase Bank's statement of material facts, and they did not explicitly consent to an amount to be awarded at the summary judgment hearing.

The affidavit presented by Chase Bank in support of its motion for summary judgment states that "an unaltered Payoff Quote for the [l]oan good through April 30, 2014" was attached as Exhibit 16. However, Exhibit 16 is a payoff quote for a loan issued by a different bank and does not support the damages awarded to Chase Bank. On appeal, Chase Bank does not point us to any additional evidence supporting the trial court's award of damages on the outstanding amounts due under the Note or any evidence identifying the corporate advances, escrow advances and late charges they sought to recover. Further, the trial court's award of attorney fees under OCGA § 13-1-11 was invalid, as it is derivative of the amount of principal and interest owing on the note. See OCGA § 13-1-11 (1). Accordingly, we find that the trial court erred by entering a judgment for the specific amount of the debt and attorney fees, and we remand the case back to the trial court for further proceedings to determine a proper award of damages and attorney fees.

*Judgment affirmed in part, reversed in part, and case remanded. Barnes, P. J., and McMillian, J., concur.*