**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 18, 2016**

# In the Court of Appeals of Georgia

A15A2132. EDMONSON v. THE STATE.

RAY, Judge.

A jury convicted Alfred Edmonson of false imprisonment (Count 1) and aggravated sodomy (Count 3) based upon his acts with a teenage victim named K. D.[1] Edmonson filed a motion for new trial, which the trial court denied. Edmonson appeals, contending the trial court erred in admitting, over objection, evidence of certain alleged sexual acts with a different teenage girl, N. R., as extrinsic offenses under OCGA § 24-4-404 (b). For the reasons that follow, we affirm.

---

[1] The jury acquitted Edmonson of rape (Count 2). The State nolle prossed a sexual battery count (Count 4) because the jury could not reach a verdict.

Viewing the evidence in the light most favorable to uphold the guilty verdict,[2] on October 11, 2012, K. D., a 17-year-old girl, was working as a prostitute on Old National Highway when Edmonson, a 41-year-old man, drove up and asked her for a "date." In exchange for $40 for the date, the victim agreed to sex in her room at the Super 8 motel. When the victim got in the car, Edmonson started driving away from the Super 8 and refused to turn around even after the victim informed him multiple times that the Super 8 was in the opposite direction. When the victim realized that Edmonson was not going to turn around, she "no longer felt safe" and tried to open the car door in an attempt to escape. Edmonson hit her in the face. They began to fight, but K. D. gave up because Edmonson was punching her in the mouth. The victim testified that she was scared and did not feel free to leave. Edmonson stopped the car and ordered the victim to take off her clothes, and she complied.

Instead of taking K. D. to the Super 8 as agreed, Edmonson took her to his house. The victim informed Edmonson that she did not want to go inside and told him "that he could let me go, that I didn't know him, he didn't know me, so this could be the last time we ever saw each other." The victim wanted to run away and would have

---

[2] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

if she "felt like there was an opportunity" to do so. Edmonson told K. D. to get dressed, and they both went inside the house.

Inside the house, Edmonson called the police; he told them that he had rescued K. D. from being abused by her pimp and that he was trying to get her help. The victim thought an officer was coming and that this would be over soon. While she was waiting on the officer, Kelly Ealy, who was Edmonson's female roommate, "best friend[,]" and mother of his child, came downstairs. Ealy noticed the victim looked scared and "was in a fixed daze." Edmonson told Ealy that he was helping K. D., and Ealy went back upstairs.

While K. D. and Edmonson were sitting on the couch, Edmonson asked her to "perform oral sex on him." Despite her protests, Edmonson would not listen and pushed the victim's head toward his penis. K. D. was scared, and she complied.

Thereafter, Edmonson laid back on the couch with the victim, wrapped his arms around her, and fell asleep. At some point, Edmonson woke up and demanded that she have sex with him. She complied because she "wanted the whole experience to be over and [she] was still scared of what he might be capable of."

At trial, the State presented evidence of other acts[3] that involved Edmonson having vaginal and oral sex with N. R., a 15-year-old female runaway. N. R. met Edmonson at a Super Bowl party where she gave him oral sex. Edmonson did not force her to have sex, and N. R. testified that she wanted to do so. When the party was over, N. R. went with Edmonson back to his house to "be with him," which she understood to mean to have a relationship. Then, N. R. and Edmonson went to a club where he encouraged her to strip in the parking lot for money, which she did. When they were back in the car, Edmonson punched N. R. three times in the face for embarrassing him by asking to leave the club.

After returning to Edmonson's home, N. R. stayed the night and had sex with Edmonson in the morning. The next day, N. R. again spent the night and had sex with him. N. R. testified that Edmonson did not force her to have sex with him. However, N. R. then lied to Edmonson and told him that someone in her family died because she "didn't want to be there no more." N. R. testified that she was afraid to leave

---

[3] We adopt the term "other acts" to include "crimes, wrongs, or other acts" as set forth in OCGA § 24-4-404 (b). (Citation and punctuation omitted.) *State v. Jones*, 297 Ga. 156, 158 (1), n. 1 (773 SE2d 170) (2015). Similarly, we adopt the term "extrinsic offense" to refer to the offense under OCGA § 24-4-404 (b) for which the defendant is not charged in the case sub judice. See *United States v. Beechum*, 582 F.2d 898, 903, n. 1 (5th Cir. 1978) (en banc).

because she believed Edmonson would hit her again. Ealy dropped N. R. off at a McDonald's on her way to work.

As a result of his sexual acts with N. R., Edmonson was charged with statutory rape, enticing a child, child molestation, and aggravated child molestation. He was acquitted of the statutory rape, enticing a child, and child molestation charges.[4] The jury was hung on the aggravated child molestation count, which was based upon sodomy and N. R.'s age, rather than the use of force.

Before trial, the State argued that Edmonson's other acts with N. R. demonstrated his intent to seek out vulnerable young women, who are medium-to-short-build African-Americans who are slightly overweight, and exploit them in sexual ways. The State explained its theory of intent by saying that the girls, as described, "colloquially [] would be his type." After hearing argument, the trial court ruled the evidence was admissible to show intent and plan.

---

[4] Though Edmonson was acquitted of these three charges, the alleged crimes might still be admissible under OCGA § 24-4-404 (b). See *United States v. Felix*, 503 U. S. 378, 386 (II) (112 SCt 1377, 118 LEd2d 25) (1992) (permitting the use of crimes under the Federal Rule 404 (b) which the defendant has been acquitted because "Rule 404 (b) [is] governed by a lower standard of proof than that required for a conviction") (citations omitted).

1. Edmonson contends the trial court erred in admitting into evidence his other acts with N. R. under OCGA § 24-4-404 (b) to demonstrate intent and plan.[5]

Under OCGA § 24-4-404 (b) in the new Evidence Code,

> Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Further, under OCGA § 24-4-403, evidence admissible under OCGA § 24-4-404 (b) may still be excluded "if its probative value is substantially outweighed by[, among other things,] the danger of unfair prejudice[.]" The trial court's decision to admit OCGA § 24-4-404 (b) evidence is reviewed for a "clear abuse of discretion." (Citation and punctuation omitted.) *Bradshaw v. State*, 296 Ga. 650, 656 (3) (769 SE2d 892) (2015).

Pretermitting whether the trial court's decision to admit the other acts evidence pursuant to OCGA § 24-4-404 (b) for intent and plan was correct, an issue which we

---

[5] Where Georgia's new Evidence Code "mirror[s] their federal counterparts," we "look to federal rules and how federal appellate courts have interpreted those rules for guidance" with preference for decisions from the Eleventh Circuit Court of Appeals. *Parker v. State*, 296 Ga. 586, 592 (3) (a) (769 SE2d 329) (2015).

6

do not address, any error in doing so was harmless given the overwhelming evidence in this case of Edmonson's guilt.

> The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict. In determining whether the trial court error was harmless, we review the record de novo, and we weigh the evidence as we would expect reasonable jurors to have done so as opposed to viewing it all in the light most favorable to the jury's verdict.

(Citations and punctuation omitted.) *Peoples v. State*, 295 Ga. 44, 55 (4) (c) (757 SE2d 646) (2014).

The trial court's order assumed without deciding that the inclusion of the 404 (b) evidence was an error, concluding that "it should be found to be harmless error given the overwhelming evidence in this case." The trial court cited K. D.'s testimony, Ealy's testimony that she saw K. D. performing oral sex on Edmonson and that K. D. looked scared, the responding officer's testimony that she observed a cut on the inside of the victim's lip, Edmonson's denial of having any sexual contact with the victim, and a taped jail phone call played at trial.

As summarized by the trial court in its order denying Edmonson's motion for new trial, the jail call contained a conversation between Edmonson and Ealy, where

7

Edmonson instructed Ealy that because she has not yet given her written statement, that he is "'gonna give [her] what to write'" and "no one will be able to say she is lying." Edmonson instructs Ealy that her written statement should say:

> [T]he defendant woke her up to tell her the victim had been in an altercation and needed help. [She] went downstairs and invited the victim to sit in the living room; she could see the defendant and the victim sitting on separate couches, and heard the defendant talking to the victim like a 'big brother,' giving her words of advice and encouragement, and then the defendant called 911 at 5:20 or 5:25. . .(at which point Ealy interrupts him and says they must get their timing "right." After discussing the timing, Edmonson continues). . . [T]he victim asked for and was given a phone charger, and that the defendant fell asleep while waiting for the police and she and the victim woke [the defendant] up at 7:00 or 7:10.

Then, Ealy informs Edmonson that the "first part" of the story was great, but that the timing of the "second part" of the story was bad since it was unclear what happened between the 911 call and 7:00. Edmonson responds that Ealy "must" say Edmonson was asleep upstairs the whole time. According to the trial court's order, "Ealy express[ed] surprise about the upstairs detail because the defendant had not mentioned that before. Then the tape ends."

8

Here, we would expect reasonable jurors to have weighed the evidence and found Edmonson guilty of false imprisonment and aggravated sodomy based upon the evidence presented, even without considering his other acts with K. D. *People*, supra at 55 (4) (c). The jury heard K. D.'s firsthand account of her false imprisonment and aggravated sodomy. K. D.'s testimony included her repeated statements that she "no longer felt safe," was scared and did not feel free to leave, and that she "wanted the whole experience to be over and [she] was still scared of what he might be capable of." K. D. also testified that Edmonson pushed her head towards his penis, and she performed oral sex on him. Her testimony included all of the elements required to find both false imprisonment and aggravated sodomy. See OCGA §§ 16-6-2 (a) (2) ("[a] person commits the offense of aggravated sodomy when he or she commits sodomy with force and against the will of the other person"); 16-5-41 (a) ("[a] person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority").

The testimony of the victim was bolstered by the responding police officer's testimony that K. D. had a cut "on the inside of her lip[,]" which was consistent with K. D.'s claims of aggravated sodomy. The officer further testified that she discussed

9

the incident with Edmonson, and "[h]e told [her] that he had not had any sexual contact with [K. D.]"

However, Edmonson's assertions that he had no sexual contact with K. D. was contradicted by Ealy when she testified that she saw K. D. giving Edmonson oral sex. Ealy also gave support to K. D's false imprisonment and aggravated sodomy claims when she testified that at times during K. D's stay at Edmonson's house that K. D. looked scared and "was in a fixed daze."

Finally, the recorded jail call between Edmonson and Ealy indicated that Edmonson and Ealy were attempting to cover up what happened the night when K. D. was at their house, since they were fabricating Ealy's story. It also further demonstrated Edmonson's tendency to lie and attempts to control the women around him.

Given the evidence discussed above, which does not include the 404 (b) evidence admitted at trial, "it is highly probable that the error did not contribute to the verdict." (Citation and punctuation omitted.) *Peoples*, supra at 55 (4) (c). By considering the trial record as a whole and weighing the evidence "as we would expect reasonable jurors to have done so," we are convinced that the jury would have

10

found Edmonson guilty of aggravated sodomy and false imprisonment without the 404 (b) evidence. (Citation and punctuation omitted.) Id.

We also note that the other acts evidence presented by the State included Edmonson having oral and vaginal sex with N. R. If this evidence had a prejudicial effect on the verdict, it stands to reason that it would have affected both the aggravated sodomy and the rape counts. However, Edmonson was acquitted of the rape count and was only convicted of aggravated sodomy, which further indicates that the error did not contribute to the verdict. *Peoples*, supra at 55 (4) (c).

2. Additionally, we note that the evidence may have been admissible under OCGA § 24-4-413, which allows for the admission of "evidence of the accused's commission of another offense of sexual assault" in sexual assault cases. OCGA § 24-4-413 (a). This statute requires that "the prosecutor shall disclose such evidence to the accused, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered, at least ten days in advance of trial[.]" OCGA § 24-4-413 (b). In the Notice of State's Intention to Present OCGA § 24-4-404 (b) Evidence, the State claimed that "[c]opies of reports, accusation/indictment, if any, and guilty pleas or verdicts, if any are included herewith or previously

11

provided." But, after reviewing the record, we can not determine whether the State did, in fact, provide these reports, guilty pleas, or verdicts. Further, we acknowledge the obvious, that the trial court did not at trial or thereafter consider whether the provisions of OCGA § 24-4-413 applied to the other acts evidence admitted in this case.

The challenge to the trial court's decision to admit the other acts evidence to demonstrate intent and plan might be moot if such evidence was otherwise admissible under OCGA § 24-4-413. However, because we have already found that any error in admitting the evidence under § 24-4-404 (b) to be harmless, if it was indeed an error, we need not decide whether the evidence was admissible under § 24-4-413.

We affirm the trial court's decision.

*Judgment affirmed. Barnes, P. J., and Peterson, J., concur.*