**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 16, 2016**

# In the Court of Appeals of Georgia

A16A0436. CHASE v. THE STATE.

PHIPPS, Presiding Judge.

William Clifford Chase, Jr. was convicted in Catoosa County of impersonating a law enforcement officer. He appeals, challenging the sufficiency of the evidence supporting venue. He also argues that the trial court erred in admitting certain evidence at trial. For reasons that follow, we affirm.

1. When reviewing the sufficiency of the evidence as to venue, we "must view the evidence in the light most favorable to the verdict and inquire whether the evidence would authorize a rational trier of fact to find beyond a reasonable doubt that venue was properly laid."[1] So viewed, the evidence shows that in October 2012, a captain with the Catoosa County Sheriff's Office received a request to approve a

---

[1] *Martin v. McLaughlin*, 298 Ga. 44, 46, n. 3 (779 SE2d 294) (2015).

LeadsOnline account for an individual claiming to be a Catoosa County sheriff's office employee. LeadsOnline is a database service used by law enforcement officers to determine whether items sold at pawn shops are stolen. Because the database contains sensitive personal information (including names, birth dates, addresses, and social security numbers of people selling to pawn shops), the service is not available to the general public. Only approved law enforcement personnel with LeadsOnline accounts and passwords have authority to access the database.

The LeadsOnline approval request included a copy of the application submitted to the search service. The application was filled out in the name of William Chase, who was identified as a major, badge number 902, with the Crime Task Force in Catoosa County. The applicant provided an email, telephone number, and post office box as an address. The captain was suspicious of the application for several reasons. The Catoosa County Sheriff's Office did not have a Crime Task Force; only one individual held the rank of major; and the major's badge number was not 902. The email, post office box, and telephone number listed on the application did not correspond to the sheriff's office. And no one employed by the sheriff's office was named William Chase.

The captain was aware, however, of the defendant in this action, William Clifford Chase, Jr., whom he had previously investigated for stealing documents from the Catoosa County Superior Court. During that investigation, Chase had falsely told the captain that he was an investigator for a local attorney. In 2008, Chase pled guilty to stealing public documents, financial identity fraud, and forgery in connection with the investigation.

Following the LeadsOnline request, officers inquired into the post office box and email address listed in the application. These inquiries produced a physical address in Catoosa County for Chase, who was subsequently arrested in the county and charged with impersonating a law enforcement officer. In a recorded interview with police, which was played for the jury, Chase asserted that he had applied for an account with LeadsOnline so that he could make sure items he was considering purchasing from an acquaintance were not stolen. Although he claimed that he was only trying to keep himself out of trouble, he admitted that he had made a mistake in applying for the account and should have tried to find the information another way.

Based on the evidence presented, the jury found Chase guilty of impersonating an officer in the online application provided to LeadsOnline. Chase challenges the judgment of conviction, asserting that the state offered insufficient proof of venue in

3

Catoosa County. Specifically, he claims that the record contains no evidence establishing where he was when he submitted the LeadsOnline application or communicated with the database service.

Generally, "[c]riminal actions shall be tried in the county where the crime was committed."[2] When the location of the crime cannot be determined, however, "it shall be considered to have been committed in any county in which the evidence shows beyond a reasonable doubt that it might have been committed."[3] At trial, one of the investigating officers testified that he attempted to identify where Chase had created and submitted the online application, but could not pinpoint the necessary Internet Protocol ("IP") address. The investigator further noted that even if he had been able to obtain an IP address, he might not have been able to determine the physical location from which Chase submitted the application because certain addresses – such as those associated with a laptop computer – roam. Chase's exact location, therefore, could not be determined.

Such testimony brought this case squarely within OCGA § 17-2-2 (h), which applies "in any case [where] it cannot be determined in what county a crime was

[2] OCGA § 17-2-2 (a).

[3] OCGA § 17-2-2 (h).

committed."[4] The state also presented evidence that Chase lived and was arrested in Catoosa County. Based on this evidence, the jury was authorized to find beyond a reasonable doubt that Chase might have held himself out as a law enforcement officer via the online application in Catoosa County.[5] Proof of venue, therefore, was sufficient.[6]

2. Chase also argues that the trial court erred in admitting into evidence a computer-generated record of his application to LeadsOnline. We disagree.

The state tendered the application pursuant to the business records exception to the rule against hearsay.[7] To authenticate the document, it used the self-

---

[4] See also *Taylor v. State*, 328 Ga. App. 551, 553 (1) (759 SE2d 892) (2014) ("One purpose of OCGA § 17-2-2 (h) is to provide for establishment of venue in situations in which there is some doubt as to which county was the scene of the crime.") (punctuation and citation omitted). Compare *Stockard v. State*, 327 Ga. App. 184, 188 (2) (761 SE2d 351) (2014) (because state made no attempt to elicit evidence of where crime occurred, it failed to demonstrate that county in which crime occurred could not be determined).

[5] See *Martin*, supra at 46 ("[V]enue generally is a question for the jury.").

[6] See OCGA § 17-2-2 (h); *Drake v. State*, 238 Ga. App. 584, 588 (2) (519 SE2d 692) (1999) (pursuant to OCGA § 17-2-2 (h), venue in child molestation case proper in county where victim lived and was accessible to defendant because defendant might have molested her there).

[7] OCGA § 24-8-803 (6).

authentication procedure set forth in OCGA § 24-9-902 (11), which allows a party to authenticate a business record by submitting a declaration from a records custodian certifying that it:

(A) Was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of such matters; (B) Was kept in the course of the regularly conducted activity; and (C) Was made by the regularly conducted activity as a regular practice.

Following a hearing, the trial court concluded that the application fell within the business records exception and had been properly authenticated. A trial court exercises its discretion in making this type of ruling, and we will not reverse its decision absent abuse of that discretion.[8]

(a) First, Chase claims that the state failed to notify him in writing that it planned to use the self-authentication procedure in OCGA § 24-9-902 (11). Pursuant to the statute, a party intending to use this procedure "shall provide written notice of such intention to all adverse parties."[9] The state did not serve Chase with separate written notice that its intent. But several days before trial, the state gave Chase an

---

[8] *Hurst v. State*, 285 Ga. 294, 297 (3) (676 SE2d 165) (2009).

[9] OCGA § 24-9-902 (11).

affidavit from the LeadsOnline records custodian. The affidavit was entitled "Business Records Affidavit" and contained information required for self-authentication. The state's intent, therefore, was clear.

As we recently explained, the purpose of the notice requirement is to "give the opponent of the evidence a full opportunity to test the adequacy of the foundation set forth in the [self-authentication] declaration."[10] Where written notice is not given, *actual* notice that a party plans to utilize the self-authentication procedure may suffice.[11] Here, Chase had actual notice before trial that the state intended to authenticate the LeadsOnline application record via a self-authentication declaration. Armed with this knowledge, he challenged the authenticity and overall admissibility of the record at a pre-trial hearing. He did not argue below – and has not demonstrated on appeal – that the lack of written notice prejudiced him in any particular way. Under these circumstances, we find the notice sufficient.[12]

---

[10] *Salas v. JP Morgan Chase Bank, N. A.*, 334 Ga. App. 274, 280 (2) (a) (779 SE2d 48) (2015) (citation and punctuation omitted).

[11] Id. at 279-280 (2) (a) (although defendant failed to provide written notice that it planned to use self-authentication procedure, plaintiffs were "clearly on notice" that the defendants intended to use the procedure, satisfying the statutory requirement).

[12] See id.

(b) Chase further argues that the LeadsOnline application did not fall within the business records exception to the hearsay rule. That exception permits the admission of a business record

> (A) made at or near the time of the described acts, events, conditions, opinions, or diagnoses; (B) made by, or from information transmitted by, a person with personal knowledge and a business duty to report; (C) kept in the course of a regularly conducted business activity; and (D) it was the regular practice of that business activity to make the . . . record.[13]

The LeadsOnline records custodian testified that the company had received and maintained the account application in the regular course of business and made a computer-generated record of it shortly after receipt. The custodian also asserted that the record "contain[ed] exact copies of the data received electronically and kept by LeadsOnline and [was] formatted according to standard LeadsOnline procedures for maintaining and presenting data."

According to Chase, the custodian's testimony was insufficient because it did not establish that the document was "made by, or from information transmitted by,

---

[13] OCGA § 24-8-803 (6).

a person with personal knowledge and a business duty to report."[14] An authenticating witness, however, "does not need firsthand knowledge of the contents of the records, of their authors, or even of their preparation."[15] Moreover, the records custodian asserted that the application record was created pursuant to standard company procedures for presenting data. The trial court did not abuse its discretion in concluding that this testimony satisfied OCGA § 24-8-803 (6).[16]

Chase also contends that the applicant responses contained within the application constitute hearsay that does not fall within the business records exception. The state, however, presented evidence that Chase completed the application and provided the responses at issue. Those responses, including the incriminating assertion that Chase was a law enforcement officer, constituted party admissions that

---

[14] OCGA § 24-8-803 (6) (B).

[15] *Matthews v. Wells Fargo Bank, N. A.*, 335 Ga. App. 526, 527 (782 SE2d 312) (2016) (citation and punctuation omitted).

[16] Id. at 527-528 (bank employee offered sufficient foundational testimony to authenticate loan records created and maintained by bank's predecessor-in-interest; although employee lacked knowledge of how predecessor-in-interest kept its records, documents were admissible given testimony that she knew how they were prepared, they were made and kept in the regular course or business, and she had no reason to believe records were inaccurate).

were not excluded by the hearsay rule.[17] Accordingly, the trial court properly admitted the document from LeadsOnline.[18]

3. Finally, Chase argues that the trial court erred in admitting evidence of his prior convictions for financial identity fraud, forgery, and stealing public documents. Pursuant to OCGA § 24-4-404 (b):

> Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

A three-part test determines the admissibility of evidence under this Code section: "(1) the evidence must be relevant to an issue other than defendant's

---

[17] OCGA § 24-8-801 (d) (2) (A) ("Admissions shall not be excluded by the hearsay rule. An admission is a statement offered against a party which is . . . [t]he party's own statement, in either an individual or representative capacity."); *Bryant v. State*, 288 Ga. 876, 888 (9) (a) (708 SE2d 362) (2011) ("[A] defendant's incriminating statement is admissible when it constitutes an admission against the defendant's penal interest because a *defendant's* declaration against penal interest is the admission of a party-opponent.") (emphasis in original).

[18] Chase vaguely claims on appeal that introduction of the LeadsOnline application record also "violate[d] the Confrontation Clause." His brief, however, contains no argument or citation of authority supporting this claim, which has thus been abandoned. See *Riles v. State*, 321 Ga. App. 894, 900 (2) (c) (743 SE2d 552) (2013); Ct. App. R. 25 (c) (2).

character; (2) the probative value must not be substantially outweighed by its undue prejudice; [and] (3) the government must offer sufficient proof so that the jury could find that defendant committed the act."[19] A decision to admit such evidence will not be reversed absent a clear abuse of discretion.[20]

(a) *Financial identity fraud and forgery*. Chase was indicted in 2007 for, among other things, committing financial identity fraud by "obtain[ing] the social security number that would assist [him] in accessing the financial resources of [the] victim," and forgery by "knowingly possess[ing] an executor's oath, a certain writing, in such manner that the writing purports to have been made by [the victim], another person, and did utter and deliver such writing." In 2008, he pled guilty to and was convicted of these two crimes, both of which involved misrepresentation or using another person's identifying information for personal advantage.

The trial court admitted copies of the 2007 indictment and Chase's guilty pleas to financial identify fraud and forgery, finding the evidence relevant to proof of intent

[19] *Bradshaw v. State*, 296 Ga. 650, 656 (3) (769 SE2d 892) (2015) (citation omitted). Although *Bradshaw* "correctly identified the general requirements for the admission of evidence of other acts," the Georgia Supreme Court has recently clarified the application of those requirements in *Olds v. State*, __ Ga. __ (Case No. S15G1610, decided May 23, 2016) slip op. at 10.

[20] *Bradshaw*, supra, 296 Ga. at 656 (3).

in this case. Chase challenges the trial court's finding on appeal. According to Chase, the issue of intent was not in dispute here, rendering the prior crimes evidence irrelevant and inadmissible. The jury, however, heard Chase's recorded statement to police, in which he insisted that he was not trying to impersonate an officer when he filled out the LeadsOnline application. He claimed that he simply wanted to avoid purchasing stolen merchandise. The state also presented evidence of a letter Chase wrote to one of the investigating officers, in which Chase stated that "there was never any criminal intent to deceive."

Intent, therefore, was in issue.[21] Furthermore, the prior criminal acts and the crime here involved a similar mental state or intent – to obtain an advantage through misrepresentation or use of someone else's identifying information. The trial court did not abuse its discretion in determining that evidence of Chase's 2008 convictions for financial identity fraud and forgery was relevant to intent.[22]

---

[21] See *Olds*, supra at 12 (Intent is "put in issue by the defendant entering a plea of not guilty."); *Silvey v. State*, 335 Ga. App. 383, 387 (1) (a) (780 SE2d 708) (2015) (evidence that burglary defendant had taken part in another burglary was relevant to issue of intent where not guilty plea placed intent in issue and defendant took no affirmative steps to remove issue of intent from the case).

[22] See *Olds*, supra at 13 ("[E]vidence that an accused committed an intentional act generally is relevant to show . . . that the same defendant committed a similar act with the same sort of intent, especially when the acts were committed close in time

Chase also claims that the trial judge failed to properly consider the prejudicial impact of this evidence under OCGA § 24-4-403, which permits exclusion of relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice." We recognize that the trial court did not explicitly reference the balancing test in OCGA § 24-4-403 before admitting the evidence. But Chase argued below that the potential prejudice precluded its admission, and the trial court implicitly rejected his argument.

Furthermore, "it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter."[23] As we have noted, OCGA § 24-4-403 offers "an extraordinary remedy that must be used sparingly because it results in the exclusion of concededly probative evidence."[24] In close cases, "the balance is struck in favor of admissibility."[25] Given the clear questions raised about Chase's

---

and in similar circumstances.") (citations omitted); *United States v. Florian*, 401 Fed. Appx. 476, 477-478 (11th Cir. 2010) (defendant's prior conviction for impersonating a United States citizen was relevant to his intent in using another individual's identity to apply for a passport).

[23] *Wilson v. State*, 336 Ga. App. 60, 63 (2) (b) ( __ SE2d __ ) (2016) (citation and punctuation omitted; emphasis in original).

[24] Id. (citation and punctuation omitted).

[25] Id. (citation and punctuation omitted).

13

intent, his claim to police that he only requested a LeadsOnline account to keep himself out of trouble, and the fact that all of these incidents involved efforts by Chase to obtain or use information through misrepresentation, the probative value of the other crimes evidence outweighed any prejudice.[26]

(b) *Stealing public documents.* Chase also pled guilty in 2008 to stealing public documents, and the trial court admitted copies of the indictment and guilty plea relating to this conviction. To support admission of this evidence, the state represented to the trial court that Chase had stolen a public document from the superior court clerk's office by posing as an employee of a local attorney. The state argued that because the crime involved misrepresentation, it was relevant to intent in this case. The record shows, however, that the state offered no testimony at trial about how the theft occurred, and the indictment to which Chase pled guilty does not describe the crime in detail. The indictment alleged only that Chase "did steal a final disposition form of a criminal case in the Superior Court of Catoosa County,

---

[26] See *Olds*, supra at 20 ("The more strongly an issue is contested, the greater the justification for admitting other act evidence bearing on the point.") (quoting Mueller & Kirkpatrick, Evidence § 4.21 (1995)) (footnote omitted); see also *Wilson*, supra, 336 Ga. App. at 63 (2) (b).

Georgia." We question, therefore, whether evidence of this conviction shed light on Chase's intent, knowledge, or any other relevant inquiry in this case.

But even if the trial court erred in admitting evidence of the stealing public documents conviction, reversal is not required. "[I]t is a fundamental principle that harm as well as error must be shown for reversal."[27] Chase admitted to police that he had applied for an account with LeadsOnline. His application falsely indicated that he held a rank of major with a Catoosa County law enforcement agency. Testimony showed that he had previously misrepresented his occupation to police. And the trial court properly admitted evidence of two prior convictions involving misrepresentation and forgery. Given this other evidence, "it is highly probable that [admission of the stealing public documents conviction] did not contribute to the verdict."[28] Any error in admitting evidence of the conviction, therefore, was harmless.[29]

---

[27] *Williams v. State*, 328 Ga. App. 876, 880 (1) (763 SE2d 261) (2014) (punctuation and footnote omitted).

[28] *Edmonson v. State*, __ Ga. App. __ (1) (Case No. A15A2132, decided March 18, 2016) (citation and punctuation omitted).

[29] See id. (admission of prior criminal acts under OCGA § 24-4-404 (b) harmless when, after "considering the trial record as a whole and weighing the evidence as we would expect reasonable jurors to have done so, we are convinced

15

*Judgment affirmed. Dillard and Peterson, JJ., concur.*

---

that the jury would have found [the defendant] guilty . . . without the 404 (b) evidence") (citation and punctuation omitted). See also *Gates v. State*, 298 Ga. 324, 328 (3) (781 SE2d 772) (2016) (claimed error in admission of OCGA § 24-4-404 (b) evidence harmless where, given proof of defendant's guilt, "it cannot be said that any error . . . likely affected the outcome below").