## A10A1935. AMAYA v. THE STATE.

(708 SE2d 28)

DOYLE, Judge.

After a jury trial, Ricardo Amaya was found guilty of rape (Count 1),[1] false imprisonment (Count 3 — as a lesser included charge of kidnapping with bodily injury),[2] aggravated assault (Count 5),[3] kidnapping (Count 6),[4] and family violence battery (Count 7).[5] Amaya appeals, arguing that the trial court erred (1) by failing to excuse a juror for cause; (2) by denying the motion for directed verdict on the Count 6 kidnapping charge for lack of evidence sufficient to show asportation; (3) by overruling his objection to the State's closing argument related to the Count 6 kidnapping charge; (4) by overruling his objection to the State's closing argument as to the issue of force on the rape charge; and (5) by incorrectly charging the jury on the issue of punishment, thereby injecting the court's opinion into deliberations. For the reasons that follow, we affirm.

> On appeal from a criminal conviction, the evidence is construed in the light most favorable to the verdict of guilt, and the presumption of innocence no longer applies. An appellate court does not weigh the evidence or judge the credibility of the witnesses, but only determines whether the adjudication of guilt is supported by sufficient competent evidence.[6]

Viewed in this light, the record establishes that on March 1, 2009, Amaya's girlfriend, R. F., exited his truck when the pair returned to the trailer at which they were living with several other

---

[1] OCGA § 16-6-1 (a) (1).

[2] OCGA § 16-5-41 (a).

[3] OCGA § 16-5-21 (a) (2).

[4] OCGA § 16-5-40 (a).

[5] OCGA § 16-5-23.1 (a), (f). Amaya was found not guilty of aggravated sexual battery under OCGA § 16-6-22.2 (b) (Count 2) and received a directed verdict of acquittal on one charge of aggravated battery under OCGA § 16-5-24 (a) (Count 4).

[6] (Punctuation omitted.) *Wilson v. State*, 256 Ga. App. 741 (1) (569 SE2d 640) (2002).

individuals. Amaya grabbed her around the neck and dragged her away from the truck; he then threw her on the ground and began beating her in the head. Amaya then dragged R. F. further into the back yard near some trees, threw pinestraw and dirt in her face, and verbally taunted her. When he finished beating her, Amaya picked up R. F. and carried her to the trailer.

On March 5, 2009, Amaya woke R. F. during the night and attempted to have sexual intercourse with her. R. F. refused because she did not want to and did not want their roommates to hear, and Amaya forcibly rolled R. F. onto her back and inserted his penis into her vagina. R. F. testified that she told him no, but he did not stop, and she rolled over and cried quietly after the event.

After awaking the next morning, Amaya demanded breakfast, which R. F. refused to cook, and Amaya grabbed her by the hair, holding her over a hot fryer, and then dragged her to the bedroom. Amaya beat and threatened R. F. Later that day, the two left the trailer together, and while they were out, R. F. sought assistance from a police officer at a local fire station, who testified that R. F. had a number of bruises and was badly injured. Amaya was arrested, and R. F. was taken to a hospital for treatment.

A sexual assault nurse testified that R. F.'s demeanor at the forensic examination was upset and tearful, and R. F. was covered in bruises. The nurse also testified that the vaginal examination was painful for R. F., who had an abrasion on her vagina and a large reddened area on her right labia.

Finally, the State presented the videotaped interview of Amaya in which he admitted fighting with R. F., admitted dragging her from the truck on March 1 and throwing her down in the yard, admitted beating her with an extension cord, and admitted having sexual intercourse with R. F. on the night of March 5, 2009.

The jury returned guilty verdicts on Count 1, rape; Count 3, false imprisonment as a lesser included charge of kidnapping with bodily injury; Count 5, aggravated assault; Count 6, kidnapping; and Count 7, family violence battery. Amaya appeals, and we affirm for the reasons that follow.

1. First, Amaya argues that the trial court erred by failing to excuse a juror for cause; specifically, he contends that her work as a sexual assault counselor who had worked with hundreds of rape victims should have led the trial court to strike her.

"The trial court has broad discretion in evaluating a prospective juror's impartiality, and its ruling on the matter will not be reversed absent manifest abuse of that discretion."[7] Amaya contends that the

---

[7] *Garduno v. State*, 299 Ga. App. 32, 34 (2) (682 SE2d 145) (2009).

trial court here abused its discretion when it failed to strike for cause Juror 243, who had been the victim of a rape approximately 30 years prior to the case and who had begun volunteering at a rape crisis center in response to the attack. During voir dire, the juror explained that she thought the parties would assume that she would not be capable of hearing the case fairly based on her background, but her background made her more aware of the gravity of false accusations. The juror stated that she was "not going to automatically assume somebody [was] lying or telling the truth if [she didn't] know the particulars of the case."

Amaya principally relies on *Garduno v. State*,[8] and *Park v. State*,[9] to argue that the trial court abused its discretion by failing to strike this prospective juror because despite her answering during voir dire that she could render an impartial verdict, her personal experience as a victim of rape and violent crime, her background as a sexual abuse counselor, and her training to always believe sexual abuse victims established her bias in favor of the victim in this case. In *Garduno*, however, the juror at issue stated that she was trained to always presume a child victim of sexual assault was telling the truth and that she was biased toward the State's key witness,[10] and the juror in *Park* admitted that he was racially biased against the defendant and presumed that the defendant committed the crime.[11] Juror 243 never expressed a presumption in favor of the victim in this case nor did she indicate a firm or fixed bias against Amaya.[12] Accordingly, the trial court did not abuse its discretion by declining to strike for cause Juror 243.

2. Amaya also argues that the trial court erred by denying the motion for directed verdict of acquittal on the kidnapping charge for lack of evidence sufficient to show the element of asportation.

> When determining the sufficiency of the evidence of asportation, the test articulated by the Supreme Court of Georgia in *Garza v. State*[13] is considered. That test assesses four factors in determining whether the movement at issue constitutes asportation: (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the

---

[8] Id.

[9] 260 Ga. App. 879 (581 SE2d 393) (2003).

[10] See *Garduno*, 299 Ga. App. at 33-35 (2).

[11] See *Park*, 260 Ga. App. at 880-881 (1).

[12] Compare with *Garduno*, 299 Ga. App. at 34-35 (2).

[13] 284 Ga. 696 (670 SE2d 73) (2008).

movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.[14]

For a showing of asportation to be made, it is not necessary that all the elements of the *Garza* test favor the State.[15]

Here, it was not error for the trial court to deny Amaya's motion for a directed verdict of acquittal on the kidnapping charge. During the March 1, 2009 incident, as R. F. exited Amaya's truck, he grabbed her by the neck and moved her away from the more public area near the truck into the back yard, and after beating her in that location, moved her deeper into the back yard toward the treeline. When Amaya finished beating R. F., he picked her up and carried her to the trailer, avoiding the windows. Although the movement here was not extensive, the facts of this situation assessed under the *Garza* test and the majority opinion in *Flores v. State*[16] militate in favor of the State. Amaya did not beat R. F. beside his truck in the immediate vicinity of the trailer;[17] instead, he moved her away from the area before he began the beating, which was not necessary to the battery and independently increased her danger and prevented her from making an escape, calling for help, or being spotted by witnesses.[18]

3. Next, Amaya contends that the trial court erred by overruling his objection to the State's closing argument related to the kidnapping charge. Although confusing, it appears that Amaya is arguing that the trial court improperly overruled his argument to the State's closing argument that "the fourth criteria is whether the movement itself presents a significant danger to the victim independent of other crimes. . . . I want you to consider whether it was movement that isolated [the victim]."

As an initial matter, Amaya has failed to support his enumeration of error with citation to authority, and he has therefore

---

[14] (Punctuation and footnotes omitted.) *Leverette v. State*, 303 Ga. App. 849, 850 (1) (696 SE2d 62) (2010). "Subsequent to *Garza*, the legislature amended the kidnapping statute; because the amendment applies to crimes committed on or after the revision's effective date of July 1, 2009, it is inapplicable here, and *Garza's* standard applies." (Punctuation omitted.) Id. at 850 (1), n. 4.

[15] See id. at 850 (1).

[16] 298 Ga. App. 574 (680 SE2d 609) (2009).

[17] The State also charged Amaya with family violence battery in connection with the March 1, 2009 incident, while the other indicted charges stemmed from the March 5, 2009 incident.

[18] See *Brashier v. State*, 299 Ga. App. 107, 110-111 (2) (681 SE2d 750) (2009) (because no other crime occurred during the movement, it could not have been an inherent part of another offense, and the movement across the basement, while slight, created an additional danger to the victim, independent of the assault); *Flores*, 298 Ga. App. at 576-577 (1) (movement of victim from front to rear of the home's curtilage was not necessary to the sexual assault and increased the danger to the victim, preventing her location and rescue).

abandoned this enumeration.[19] Nevertheless, we note that "the jury is to receive the law from the court, not from counsel. However, counsel have every right to refer to applicable law in argument; it is law that the court will not charge the jury that counsel is prohibited from presenting."[20] Below, Amaya contended that the State was arguing an incorrect statement of the law; however, the State's closing argument comported with the trial court's charges to the jury and to the law on kidnapping at the time of trial.[21]

4. Amaya also contends that the trial court erred by overruling his objection to the State's closing argument as to the issue of force on the rape charge. Specifically, he contends that the sexual assault nurse could not testify that based on an abrasion discovered on R. F.'s vagina, the March 5 intercourse was forcible. Again, Amaya presents no citation to authority to support his contention, and we therefore deem his enumeration abandoned.[22]

5. Finally, Amaya argues that the trial court erred by incorrectly charging the jury that "[y]ou are only concerned with the guilt or innocence of the defendant. You are not to concern yourself with punishment" because the instruction improperly injected the court's opinion as to Amaya's guilt. "The charge is an accurate statement of the law," and this argument is without merit.[23]

*Judgment affirmed. Ellington, C. J., and Andrews, J., concur.*

DECIDED MARCH 16, 2011.

*Larry L. Duttweiler, H. Bradford Morris, Jr.*, for appellant.
*Lee Darragh, District Attorney, Wanda L. Vance, Assistant District Attorney*, for appellee.

---

[19] See Court of Appeals Rule 25 (c) (2).

[20] (Punctuation omitted.) *Reedman v. State*, 265 Ga. App. 162, 168 (11) (b) (593 SE2d 46) (2003).

[21] See *Leverette*, 303 Ga. App. at 850 (1).

[22] Court of Appeals Rule 25 (c) (2).

[23] *Roberts v. State*, 276 Ga. 258, 260 (4) (577 SE2d 580) (2003).