**FIFTH DIVISION**
**DILLARD, P. J.,**
**REESE and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 21, 2017**

# In the Court of Appeals of Georgia

A16A1960. MORRIS v. THE STATE.

DILLARD, Presiding Judge.

Following a trial by jury, Taurean Morris was convicted of criminal attempt to commit armed robbery, aggravated assault, aggravated battery, violation of the Georgia Street Gang Terrorism and Prevention Act[1] (three counts), and possession of a firearm during the commission of a felony. Morris appeals from these convictions, arguing that (1) the evidence was insufficient to sustain his convictions for violation of the Street Gang Terrorism and Prevention Act; (2) his trial counsel rendered ineffective assistance in a number of instances; (3) the trial court erred in denying a motion to sever his trial from that of a co-defendant; (4) the trial court

---

[1] *See* OCGA § 16-15-1 et seq. ("This chapter shall be known and may be cited as the 'Georgia Street Gang Terrorism and Prevention Act.'").

erroneously admitted evidence under Rule 404 (b); (5) the trial court erred in giving limiting instructions to the jury; (6) the trial court erred in admitting irrelevant and cumulative hearsay testimony regarding his alleged gang connections; and (7) certain counts should have merged for purposes of sentencing. For the reasons set forth *infra*, we affirm Morris's convictions in part, vacate in part, and remand to the trial court for resentencing.

Viewed in the light most favorable to the jury's verdict,[2] the record reflects that on January 8, 2014, the victims, Raymond Ball and Jazmine Webb, were at home in their apartment when there was a sudden knock at the door. Webb peered through the peephole and recognized a person with "little twist dreads," who she had seen purchase marijuana from Ball on numerous occasions. Webb also recalled previously seeing this person associated with a gray, four-door vehicle.

When Ball looked through the peephole and saw two men, he was hesitant to open the door because he was not expecting visitors. But he eventually did so after recognizing one of the two men as "Tee," someone who had purchased marijuana from him more than 20 times. Ball and Webb later identified "Tee" in court as Morris.

---

[2] *See, e.g.*, *Muse v. State*, 323 Ga. App. 779, 780 (748 SE2d 136) (2013).

And when Morris and the other man entered the apartment, Webb immediately recognized the other man as Dekarri Ruffin, a former classmate.

Morris and Ruffin feigned interest in purchasing marijuana from Ball, which he went to retrieve from a back bedroom.[3] But upon returning to the hallway, Ball was confronted by the men and, though he subsequently blacked out and could not remember exactly what occurred, both he and Webb testified that Morris fired shots from a handgun, two of which struck Ball, inflicting serious injuries.[4] Ball then recalled seeing both Morris and Ruffin appear to look for items to steal before fleeing the apartment after Webb's brother emerged from his room. In a 911 call that followed, Webb identified Ruffin by name. And immediately after the incident, a neighbor who heard multiple gunshots saw two males matching Morris and Ruffin's description run into the parking lot and, shortly after that, saw a gray, four-door vehicle depart from the scene.

The same night as the incident, Webb visited Ruffin's Facebook page and, while perusing the account, identified both Ruffin and Morris in pictures as having

---

[3] Ball was subsequently charged with and pleaded guilty to several marijuana-distribution charges in the aftermath of this incident.

[4] Despite performing surgery that saved his life, doctors were unable to remove the two bullets lodged in Ball's body.

been the perpetrators. She then showed these pictures to an investigating officer. Webb then found more pictures on Facebook later that same night, including a photograph of the vehicle that she had previously associated with Morris, and she provided the officer with those pictures as well. Using the photograph of the gray, four-door vehicle, officers were able to associate the vehicle's tag number with Morris's name and address.

Thereafter, law enforcement presented Ball with two photographic lineups, and he identified Ruffin and Morris in both of them. And when Morris was later apprehended, he was found with his hair in "little twist dreads" like those Webb had described. Morris and Ruffin were jointly indicted, tried together for the offenses enumerated *supra* after the trial court denied their motions to sever, and ultimately convicted of the enumerated offenses. Morris appeals following the denial of his motion for new trial.

At the outset, we note that when a criminal conviction is appealed, the appellant no longer enjoys a presumption of innocence.[5] And the relevant question before us is whether, "after reviewing the evidence in the light most favorable to the

---

[5] *Arbegast v. State*, 332 Ga. App. 414, 415 (1) (773 SE2d 283) (2015); *Westbrooks v. State*, 309 Ga. App. 398, 399 (1) (710 SE2d 594) (2011).

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[6] We are not at liberty to weigh the evidence or determine witness credibility, and the jury's verdict will be upheld so long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case.[7] With these guiding principles in mind, we turn now to Morris's enumerations of error.

1. Morris argues that the evidence was insufficient to sustain his convictions in counts 4, 5, and 6 for violation of the Street Gang Terrorism and Prevention Act.[8] Specifically, he contends that the State failed to establish that he was associated with

---

[6] *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[7] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001); *Westbrooks*, 309 Ga. App. at 399-400 (1).

[8] Morris also separately enumerates that the trial court erred by failing to grant a directed verdict as to these counts; however, we "review a denial of a motion for directed verdict under the same standard as that for determining the sufficiency of the evidence to support a conviction." *Jordan v. State*, 322 Ga. App. 252, 252 (2) (744 SE2d 447) (2013); *see also Bounds v. State*, 264 Ga. App. 584, 584 (1) (591 SE2d 472) (2003) ("In a criminal case, alleging error based upon a trial court's failure to grant a directed verdict of acquittal is tantamount to challenging the sufficiency of the evidence. Accordingly, we review the denial of a motion for a directed verdict of acquittal under the [same standard]." (punctuation omitted)).

a criminal street gang or to establish the necessary nexus between the predicate crimes and criminal-gang activity. We disagree.

A criminal street gang is a "group of three or more persons associated in fact . . . which engages in criminal street gang activity."[9] The existence of such a gang may be established by "evidence of symbols, tattoos, graffiti, attire, [and] other distinguishing characteristics" that include, but are not limited to "common activities, customs, or behaviors."[10] And in Georgia it is "unlawful for any person employed by or associated with a criminal street gang to conduct or participate in criminal gang activity through the commission of" specific enumerated offenses.[11]

Here, Morris was charged with three counts of violating the Georgia Street Gang Terrorism and Prevention Act by participating in criminal street gang activity

---

[9] OCGA § 16-15-3 (2); *see also* OCGA § 16-15-3 (1) (defining "criminal street gang activity" as "commission, attempted commission, conspiracy to commit, or solicitation, coercion, or intimidation of another person to commit any of [certain thereafter specified] offenses on or after July 1, 2006"); *accord In the Interest of C. P.*, 296 Ga. App. 572, 575 (675 SE2d 287) (2009).

[10] OCGA § 16-15-3 (2); *accord In the Interest of C. P.*, 296 Ga. App. at 575.

[11] OCGA § 16-15-4 (a); *see also* OCGA § 16-15-3 (1) (defining "criminal street gang activity" as "commission, attempted commission, conspiracy to commit, or solicitation, coercion, or intimidation of another person to commit any of [certain thereafter specified] offenses on or after July 1, 2006").

through the commission of attempted armed robbery, aggravated assault, and aggravated battery while associated with "Sex Money Murder," a criminal street gang, and "a subset of the Blood criminal street gang." In order to prove that he violated the Act in these ways, the State was required to show that (1) Morris was, in fact, associated with Sex Money Murder; (2) Sex Money Murder was a "criminal street gang" as defined by law;[12] (3) Morris committed the predicate acts of "criminal street gang activity," namely attempted armed robbery, aggravated assault, and aggravated battery;[13] and (4) the commission of the predicate acts was intended to further the interests of Sex Money Murder.[14] As to this final factor, it is well established that "proof that the commission of the predicate act was intended to

---

[12] *See* OCGA § 16-15-3 (2) (defining "criminal street gang" as a "group of three or more persons associated in fact . . . which engages in criminal street gang activity").

[13] *See* OCGA § 16-15-3 (1) (J) (defining "criminal gang activity" to include "[a]ny criminal offense in the State of Georgia, any other state, or the United States that involves violence, possession of a weapon, or use of a weapon, whether designated as a felony or not, and regardless of the maximum sentence that could be imposed or actually was imposed").

[14] *See Jones v. State*, 292 Ga. 656, 659 (1) (b) (740 SE2d 590) (2013) (listing the evidence necessary to prove a violation of the Criminal Street Gang Terrorism and Prevention Act).

further the interests of the gang is *essential* to prove a violation of OCGA § 16-15-4 (a)."[15]

First, although Morris does not challenge the sufficiency of the evidence as to the underlying predicate offenses of attempted armed robbery,[16] aggravated assault,[17] and aggravated battery,[18] we note that the evidence, as recounted *supra*, was sufficient

---

[15] *Nolley v. State*, 335 Ga. App. 539, 543 (1) (782 SE2d 446) (2016) (punctuation omitted) (emphasis supplied); *accord Jones*, 292 Ga. at 659; *see also In the Interest of C. P.*, 296 Ga. App. at 575 ("[O]ur Supreme Court has . . . held that a conviction under OCGA § 16-15-4 (a) requires that there be some nexus between the enumerated act and an intent to further street gang activity." (punctuation omitted)).

[16] OCGA § 16-4-1 ("A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime."); OCGA § 16-8-41 (a) ("A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon.").

[17] OCGA § 16-5-21 (b) (2) ("A person commits the offense of aggravated assault when he or she assaults[ ] . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]").

[18] OCGA § 16-5-24 (a) ("A person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another by depriving him or her of a member of his or her body, by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof.").

for the jury to conclude that he committed same and, thus, to sustain his convictions for counts 1 through 3.[19]

As to Morris's association with Sex Money Murder and the fact that Sex Money Murder *is* a criminal street gang, the State presented *extensive* evidence of both Morris and Ruffin's association with other members of Sex Money Murder, and witnesses testified regarding the criminal activities committed by those other members and/or the criminal activities of the gang.[20] Additionally, an expert in criminal street gangs described for the jury the "symbols, tattoos, graffiti, attire, [and] other distinguishing characteristics," including "common activities, customs, or

[19] *See Jackson*, 443 U.S. at 319 (III) (B) (setting forth that in assessing the sufficiency of the evidence, the relevant question is whether, "after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). The evidence was also sufficient to sustain Morris's conviction for possession of a firearm during the commission of a felony (count 7), because he possessed a firearm during the aggravated assault and aggravated battery of Ball, as indicted. *See* OCGA § 16-11-106 (b) (1) ("Any person who shall have on or within arm's reach of his or her person a firearm . . . during the commission of, or the attempt to commit . . . [a]ny crime against or involving the person of another . . . and which crime is a felony, commits a felony and, upon conviction thereof, shall be punished by confinement for a period of five years, such sentence to run consecutively to any other sentence which the person has received.").

[20] *Cf. In the Interest of A. D.*, 311 Ga. App. 384, 386-87 (715 SE2d 787) (2011) (reversing convictions when State failed to establish that alleged street gang engaged in criminal activities other than the predicate acts for which defendants were on trial).

9

behaviors,"[21] that are associated with Sex Money Murder. Then, after reviewing Facebook posts by Morris and Ruffin in which the two displayed various distinguishing characteristics associated with Sex Money Murder (*e.g.*, hand signs/symbols, language, tattoos), the State's expert witness opined that both were indeed members of the gang. As a result, the State presented sufficient evidence to connect Morris to Sex Money Murder and to establish that Sex Money Murder is a criminal street gang as defined by law.[22]

Morris next argues that the State's evidence failed to show that the commission of the attempted armed robbery, aggravated assault, and aggravated battery were intended to further the interests of Sex Money Murder. In other words, Morris argues

---

[21] OCGA § 16-15-3 (2).

[22] *See Hayes v. State*, 298 Ga. 339, 342 (a) (781 SE2d 777) (2016) (holding that State connected defendant and his co-defendants to criminal street gang when it presented expert testimony regarding criminal street gangs and explanation of words and symbols commonly associated with the street gang at issue, evidence of defendants publicly displaying those words and symbols, and evidence of defendants' participation in gang-related activity just prior to committing the predicate crime); *cf. Jones*, 292 Ga. at 659 (1) (b) (holding that State failed to connect defendant to criminal street gang when no witness testified that defendant was a member of the relevant gang, that those accompanying defendant at time of crime were members of the gang, that defendant was associated in any way with the gang, or that defendant or accomplices displayed gang's symbols or colors, either on the day of the crime or at any other time).

10

that the State failed to establish the necessary nexus between those crimes and participation in a criminal street gang. And in *Randolph v. State*,[23] in which we reversed the criminal conviction due to the State's failure to establish the necessary nexus between the predicate acts and participation in a criminal street gang,[24] we noted that whenever we have found the evidence sufficient to sustain such a conviction, "the [S]tate has shown something more than the mere commission of a crime by gang members."[25]

In this case, the State presented evidence of both Morris *and* Ruffin's association with members of Sex Money Murder; evidence of both Morris and Ruffin publicly displaying symbols and using language associated with Sex Money Murder; and evidence of Sex Money Murder's criminal activities. And in order to connect Morris and Ruffin's association with Sex Money Murder to the predicate crimes, the State presented evidence that just three days after the incident in question, Ruffin—to whom Webb was connected via Facebook—posted a status update that read as follows: "Yall been waiting on a reply . . keep waiting yall will 3 me when yall 3 me

---

[23] 334 Ga. App. 475 (780 SE2d 19) (2015).

[24] *Id.* at 482 (4).

[25] *Id.* at 481 (4).

11

. . say no more . . . #BLATT #SMM #GunzUP" Testimony by a law-enforcement officer established that the hashtags[26] used at the end of the status update were words or references commonly used by the Sex Money Murder gang. And Webb saw Ruffin's Facebook post and testified that she commented on it ("He a bitch once again an he aint gone shoot shit dats y da pussy out hiding now. #dem real goons gne cme get da bitch!") because she believed he was making reference to shooting Ball.

Once again, when reviewing the sufficiency of the evidence, this Court does not weigh the evidence or determine witness credibility, and we will uphold the jury's verdict so long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case.[27] It is well established that criminal intent is a question for the jury, and such intent "may be inferred from that

---

[26] *See generally* Anita Campbell, *What is a Hashtag? And What Do You Do With Hashtags?*, SMALL BUSINESS TRENDS (Aug. 11, 2013), https://smallbiztrends.com/2013/08/what-is-a-hashtag.html ("Hashtags are used mostly on social media sites. . . . Anyone sharing content on a relevant topic can add the hashtag label to their message. Others searching for that topic[ ] can search for that label to find other messages on that same social media platform."); *see also, e.g.,* Jason P. Steed (@5thCirAppeals), TWITTER (January 3, 2017, 10:25 PM), https://twitter.com/5thCircAppeals/status/816485743564562436 (noting benefits of #AppellateTwitter hashtag and online community of appellate practitioners).

[27] *Miller*, 273 Ga. at 832; *Westbrooks*, 309 Ga. App. at 399-400 (1).

person's conduct before, during, *and after* the commission of the crime."[28] And here, in light of the above-referenced Facebook post, its gang-related content, its timing relevant to the incident in question, and Webb's understanding of the post as referring to the incident, we cannot say that the State failed to present *any* evidence from which the jury could infer criminal intent to further the interests of the Sex Money Murder criminal street gang through the attempted robbery and shooting of Ball.[29] Accordingly, we sustain Morris's convictions for violation of the Georgia Street Gang Terrorism and Prevention Act.

2. Next, Morris argues that his trial counsel rendered ineffective assistance in a number of instances. Again, we disagree.

Before addressing Morris's contentions, we note that, in general, when a defendant claims that his trial counsel was ineffective, he has the burden of

---

[28] *Coe v. State*, 293 Ga. 233, 235 (1) (748 SE2d 824) (2013) (punctuation omitted) (emphasis supplied); *accord Jones*, 292 Ga. at 656 (1) (a).

[29] *See In the Interest of D. M.*, 307 Ga. App. 751, 752 (1) (706 SE2d 683) (2011) (holding that evidence was sufficient to sustain conviction when State showed that defendant wore a black bandana during commission of crime, and expert testimony established that wearing a black bandana "was a proclamation that the shooting was a gang act"); *cf. Randolph*, 334 Ga. App. at 482 (4) (holding that State failed to present any evidence to establish a nexus between predicate drug crime and a specific intent to further the interests of criminal street gang).

13

establishing that "(1) his attorney's representation in specified instances fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[30] And when a trial court determines, as the court below did here, that a defendant did not receive ineffective assistance, we will affirm that decision unless it is clearly erroneous.[31] With these guiding principles in mind, we turn now to Morris's specific arguments.

(a) First, Morris contends that counsel was ineffective by failing to file a special demurrer as to counts 4, 5, and 6. We find this argument unavailing.

To begin with, a special demurrer challenges "the sufficiency of the form of the indictment,"[32] and in such a demurrer, the defendant claims that the indictment is

---

[30] *Muldrow v. State*, 322 Ga. App. 190, 193 (2) (b) (744 SE2d 413) (2013) (punctuation omitted); *accord Owens v. State*, 317 Ga. App. 821, 823 (1) (733 SE2d 16) (2012).

[31] *Muldrow*, 322 Ga. App. at 193 (2) (b); *accord Owens*, 317 Ga. App. at 823 (1).

[32] *Bramblett v. State*, 239 Ga. 336, 337 (1) (236 SE2d 580) (1977); *accord State v. Hood*, 307 Ga. App. 439, 441 (706 SE2d 566) (2010).

"imperfect as to form or that the accused is entitled to more information."[33] Morris argues that counts 4, 5, and 6 were subject to a special demurrer because the indictment (1) "did not inform [him] of the act(s) he allegedly committed that were considered as criminal street gang activity in furtherance of a gang," (2) the criminal street gang activity must be "separate and distinct from the acts alleged in the indictment,"[34] and (3) the "State failed to allege a specific date on which the gang came into existence prior to the alleged occurrence of the enumerated offenses . . . ."

As to the first and second contentions, they are wholly without merit when, as discussed in Division 1 *supra*, Morris was charged with violating the Georgia Street Gang Terrorism and Prevention Act in counts 4, 5, and 6 by, "on or about the 8th day of January, 2014, being associated with Sex Money Murder, a criminal street gang, and a subset of the Blood criminal street gang" and unlawfully "conduct[ing] and

---

[33] *Hood*, 307 Ga. App. at 441; *accord State v. Delaby*, 298 Ga. App. 723, 724 (681 SE2d 645) (2009).

[34] It is not entirely clear what Morris means by this contention, and he fails to cite any authority in support thereof. *See* COURT OF APPEALS RULE 25 (a) (3) ("Part Three [of the appellant's brief] shall contain the argument and citation of authorities. It shall also include a concise statement of the applicable standard of review with supporting authority for each issue presented in the brief.").

15

partipat[ing] in criminal gang activity through the commission of" attempted armed robbery, aggravated assault, and aggravated battery.

As to the third contention, it too is without merit when, just as in *Hood v. State*,[35] the indictment here "sufficiently alleged that the criminal street gang was in existence and ongoing at the time of the commission of the enumerated offenses."[36] And as we expressed in *Hood*, "it was not necessary for the indictment also to contain a specific allegation that the gang existed prior to the commission of any of the enumerated offenses, or to include a specific enumerated offense that was committed prior to the commission of any of the enumerated offenses in this case."[37]

Furthermore, even if counsel somehow rendered ineffective assistance by failing to file a special demurrer as to counts 4, 5, and 6, Morris cannot establish that he suffered prejudice. Indeed, if a special demurrer is granted,

> the trial court quashes the indictment. However, the quashing of an indictment merely bars trial on the flawed indictment; it does not bar the State from reindicting the defendant. Thus, even if [Morris's] attorney had filed a demurrer, it would not have prevented the State from

---

[35] 307 Ga. App. 439 (706 SE2d 566) (2010).

[36] *Id.* at 443 (1).

[37] *Id.*

16

reindicting and trying [Morris]. And [Morris] does not argue that the imperfect indictment prejudiced his defense in any way . . . .[38]

Thus, this claim of ineffective assistance of counsel fails.

(b) Second, Morris contends that counsel was ineffective by failing to object to the trial court's erroneous limiting instructions. However, Morris has abandoned this enumeration of error by failing to provide citation to authority in support of same, or to fully develop an argument as to why an objection was necessary or appropriate such that his counsel rendered ineffective assistance by *failing* to object.[39] Furthermore, trial counsel testified at the motion-for-new-trial hearing that the decision not to object to the trial court's limiting instructions was a matter of strategy

---

[38] *Chapman v. State*, 318 Ga. App. 514, 517 (1) (a) (733 SE2d 848) (2012) (punctuation omitted); *accord Cuzzort v. State*, 307 Ga. App. 52, 56-57 (2) (b) (703 SE2d 713) (2010).

[39] *See In re Whittle*, 339 Ga. App. 83, 91 (2) (793 SE2d 123) (2016) (deeming enumeration of error abandoned when appellant provided no citation to authority); *Amaya v. State*, 308 Ga. App. 460, 463-64 (3), 464 (4) (708 SE2d 28) (2011) (same); *see also* COURT OF APPEALS RULE 25 (c) (2) ("Any enumeration of error which is not supported in the brief by citation of authority or argument may be deemed abandoned.").

17

because counsel "felt they were in [Morris's] interest." And it is well established that "[m]atters of trial strategy do not support a claim of ineffective assistance."[40]

(c) Finally, Morris argues that counsel was ineffective by failing to object to hearsay testimony from the State's gang expert. Once again, we disagree.

Although Morris alleges that the State's gang expert provided inadmissible hearsay testimony, he cites to no such portion of the record. Instead, the only portion of the record to which Morris cites is wherein the gang expert testified to not having personally investigated the case at hand. But the investigator never testified regarding any information that was relayed to him by another individual.[41]

Instead, the record reflects that the investigator testified regarding his extensive training and experience in investigating criminal street gangs; his personal knowledge as to the history and characteristics of Sex Money Murder as a subset of the Blood criminal street gang; his personal knowledge as to the graffiti, symbols, hand signs,

---

[40] *Paschal v. State*, 335 Ga. App. 411, 416 (3) (780 SE2d 681) (2015); *see id.* (rejecting claim that counsel rendered ineffective assistance by failing to object to limiting instruction when counsel testified that not doing so was a matter of trial strategy).

[41] *Cf. Green v. State*, 266 Ga. 237, 239 (2) (466 SE2d 577) (1996) (holding that officer's testimony was insufficient to establish a "pattern of criminal gang activity" when his opinion was based not upon facts he personally observed but upon information gleaned from other investigators).

18

colors, language, and tattoos associated with criminal street gangs and, in particular, with Sex Money Murder; and his familiarity with Sex Money Murder members with whom Morris and Ruffin associated. The expert was then shown previously admitted exhibits of various photographs and social-media posts made by Ruffin and Morris. After reviewing same, he identified different hand signs, language, and other symbols displayed in those exhibits that indicated association with Sex Money Murder before testifying that, based upon a review of that evidence, it would be his opinion that both Ruffin and Morris are associated with the gang.

In light of the foregoing, Morris has failed to establish that his counsel rendered ineffective assistance by failing to object when the State's expert testified from personal knowledge and did not provide inadmissible hearsay testimony.[42]

3. Morris contends that the trial court erred in denying a motion to sever his trial from that of Ruffin. Yet again, we disagree.

When a defendant seeks severance, he must "show clearly that he will be prejudiced by a joint trial, and in the absence of such a showing, this Court will not

---

[42] *See, e.g.*, *Ventura v. State*, 284 Ga. 215, 218 (4) (663 SE2d 149) (2008) ("The failure to pursue a futile objection does not amount to ineffective assistance.").

disturb the trial court's denial of a severance motion."[43] When it rules upon such a motion, the trial court is to consider "whether a joint trial will create confusion of the evidence and law, whether there is a danger that evidence implicating only one defendant will be considered against a co-defendant despite limiting instructions, and whether the defendants are asserting antagonistic defenses."[44] But this Court will not find that the denial of a motion for severance was an abuse of discretion "unless it appears that the defendant suffered prejudice that amounted to a denial of due process."[45]

Here, citing to only a single 1970 case from the United States Court of Appeals for the Fifth Circuit and to *no* binding precedent from Georgia,[46] Morris argues that

---

[43] *Denny v. State*, 281 Ga. 114, 115-16 (636 SE2d 500) (2006).

[44] *Id.* at 116.

[45] *Ham v. State*, 303 Ga. App. 232, 241 (1) (692 SE2d 828) (2010); *see also Owen v. State*, 266 Ga. 312, 314 (2) (467 SE2d 325) (1996) ("[A] defendant must do more than raise the possibility that a separate trial would give him a better chance of acquittal. He must make a clear showing of prejudice and a consequent denial of due process." (punctuation omitted)).

[46] *See* COURT OF APPEALS RULE 25 (a) (3) ("Part Three [of the appellant's brief] shall contain the argument and citation of authorities. It shall also include a concise statement of the applicable standard of review with supporting authority for each issue presented in the brief.").

the trial court erred in denying his motion to sever because (1) the trial involved evidence that was presented only as to Ruffin; (2) the jury could not have been expected to follow the trial court's numerous limiting instructions as to the evidence; (3) the joint trial permitted the jury to find Morris guilty by association; and (4) his defense was antagonistic to Ruffin's simply by the fact that a conflict attorney had been appointed. But Morris has failed to make a clear showing of prejudice and a denial of due process in the absence of severance. Indeed, the number of defendants involved—two—was not so large as to create confusion as to the evidence and law applicable to each defendant.[47] Moreover, as to evidence that was applicable only to Ruffin and Morris's "guilt by association" assertion, the trial court instructed the jury about "the limited purposes of such evidence and also that it was not authorized to find a person guilty of a crime who was 'merely associated' with other involved persons."[48] And other than citing the appointment of a conflict defender, Morris does not specify how or why his defense was antagonistic to Ruffin's defense, especially given that both defendants appeared to challenge identification and the sufficiency

---

[47] *Denny*, 281 Ga. at 116 (1); *see also Ward v. State*, 288 Ga. 641, 644 (3) (706 SE2d 430) (2011) ("[T]here was no danger of confusion because only two defendants were on trial and the same evidence was applicable to each.").

[48] *Denny*, 281 Ga. at 116 (1).

21

of the State's evidence to prove its case.[49] Thus, the trial court did not err in denying Morris's motion to sever his trial from that of Ruffin.

4. Morris next asserts that the trial court erroneously admitted evidence under OCGA § 24-4-404 (b) (*i.e.*, Rule 404 (b)). Specifically, he argues that the trial court erred by admitting evidence of his prior theft conviction in order to establish motive and intent. Morris also appears to take issue with the admission of evidence regarding his prior conviction for possession of marijuana. We disagree that the trial court committed reversible error by admitting any of this evidence.

First, Rule OCGA § 24-4-404 (b) provides that

[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[50]

---

[49] *See Adkins v. State*, 279 Ga. 424, 427 (3) (614 SE2d 67) (2005) ("[T]he defenses were complimentary [sic], not antagonistic, in that all defendants argued that the State had charged the wrong men and had failed to prove its case.").

[50] OCGA § 24-4-404 (b); *accord Smart v. State*, 299 Ga. 414, 417 (2) (788 SE2d 442) (2016).

And evidence that is offered for a proper purpose under Rule 404 (b) may be excluded under OCGA § 24-4-403 (*i.e.*, Rule 403) if the evidence's "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[51]

The Supreme Court of Georgia has adopted a three-part test by which we evaluate the admissibility of so-called "other acts" evidence:[52] "(1) the evidence must be relevant to an issue other than defendant's character; (2) the probative value must not be substantially outweighed by its undue prejudice; [and] (3) the government must offer sufficient proof so that the jury could find that defendant committed the

---

[51] OCGA § 24-4-403 (b); *accord Smart*, 299 Ga. at 417 (2). *See generally* Ronald L. Carlson & Michael Scott Carlson, CARLSON ON EVIDENCE 130 (5th ed. 2016) ("Evaluating the balance between probativity and prejudice under Rule 403 calls for a commonsense assessment of all the circumstances surrounding the other act, including [the] proponent's need for the [Rule 404 (b)] evidence, the overall similarity between the extrinsic evidence and the offense at issue, and the temporal proximity of the two.").

[52] *Smart*, 299 Ga. at 417 (2). *See generally Bradshaw v. State*, 296 Ga. 650, 656 (3) (769 SE2d 892) (2015) (adopting the three-part test used by the Eleventh Circuit Court of Appeals in evaluating such evidence pursuant to the Federal Rules of Evidence, upon which Georgia's new Evidence Code is modeled).

23

act."[53] As to the first factor, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[54] And as to the second factor, even if 404 (b) evidence is relevant, we must then decide whether "the probative value of the other acts evidence is substantially outweighed by its unfair prejudice, i.e., the evidence must satisfy the requirements of Rule 403."[55] Of course, application of the Rule 403 balancing test is "a matter committed principally to the discretion of the trial courts, but as we have explained before, the exclusion of evidence under Rule 403 is an extraordinary remedy which should be used only sparingly."[56] Finally, we review the admission of Rule 404 (b) evidence "for a clear abuse of discretion," a review requiring us to make "a common sense assessment of all the circumstances surrounding the extrinsic offense, including

---

[53] *Smart*, 299 Ga. at 417 (2) (punctuation omitted), *quoting United States v. Ellisor*, 522 F3d 1255, 1267 (11th Cir. 2008). We note that Morris does not challenge the third prong, and the State presented evidence to show that Morris was convicted of the crimes relevant to the Rule 404 (b) evidence.

[54] OCGA § 24-4-401; *accord Smart*, 299 Ga. at 418 (2) (a).

[55] *Smart*, 299 Ga. at 418 (2) (b) (punctuation omitted); *accord State v. Jones*, 297 Ga. 156, 159 (773 SE2d 170) (2015).

[56] *Smart*, 299 Ga. at 418 (2) (b) (punctuation omitted).

prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness."[57]

Here, Morris argues that the trial court erred in admitting evidence of his theft conviction when that incident was "remote in time to the charges stated within the indictment" and "there were no similarities or nexus between the prior independent acts and the instant case." He also maintains that the trial court erred by admitting evidence of his prior conviction for possession of marijuana.

As to the evidence of theft, the State presented the testimony of a woman who stated that, in 2012, both Morris and Ruffin accompanied a friend to her home so that they could all shoot her father's firearm. But when the group returned to her home after shooting the gun on a farm, Ruffin and Morris refused to return it to her possession, with Morris in particular telling her that she could not have the gun back. She then immediately notified law enforcement, who located the vehicle in which Ruffin and Morris were traveling and, during the ensuing stop, located two firearms inside the vehicle beneath Ruffin's seat, including the one that belonged to the victim's father. Morris thereafter pleaded guilty to a charge of theft by taking. The

---

[57] *Graham v. State*, 337 Ga. App. 664, 669 (2) (788 SE2d 555) (2016) (punctuation omitted); *accord Brannon v. State*, 298 Ga. 601, 606 (4) (783 SE2d 642) (2016).

25

trial court admitted the evidence of Morris's prior conviction for theft by taking because it found the evidence relevant to show intent, knowledge, and plan with regard to the charge of possessing a firearm during the commission of a felony; and the court instructed the jury that it was being admitted for that purpose.

As to the evidence of possession of marijuana, a law-enforcement officer testified that during a traffic stop in September 2013, he detected the odor of marijuana, and the driver, Morris, admitted that there was marijuana in the driver's side door. Morris thereafter pleaded nolo contendere to a charge of possessing less than one ounce of marijuana. The trial court admitted the evidence of Morris's prior possession of marijuana after concluding that the evidence was relevant to show his motive and intent with regard to the charge of attempt to commit armed robbery (*i.e.*, to show motive and intent to steal Ball's stash of marijuana), and the court instructed the jury as to its reason for doing so.

But even if the trial court erred in admitting the foregoing evidence, any error was harmless because "it is highly probable that the error did not contribute to the verdict."[58] And when we determine whether error was harmless, "we review the

---

[58] *Edmonson v. State*, 336 Ga. App. 621, 624 (1) (785 SE2d 563) (2016) (punctuation omitted); *accord Peoples v. State*, 295 Ga. 44, 55 (4) (c) (757 SE2d 646) (2014); *Booth v. State*, 293 Ga. 285, 289 (2) (b) (745 SE2d 594) (2013); *Lindsey v.*

26

record de novo"[59] and "weigh the evidence as we would expect reasonable jurors to have done so as opposed to viewing it all in the light most favorable to the jury's verdict."[60]

In this case, looking to the evidence as recounted *supra*, it is highly probable that any error in admitting testimony regarding a misdemeanor conviction for possessing less than one ounce of marijuana and testimony regarding a dissimilar theft in which there were no threats of or use of violence (and the victim was apparently unaware that Ruffin or Morris possessed their own firearm) did *not* contribute to the verdict in light of the strength of the *other* evidence presented by the State.[61] Indeed, the extensive evidence in this case consisted of the victims' testimony

---

*State*, 282 Ga. 447, 450 (2) (651 SE2d 66) (2007).

[59] *Edmonson*, 336 Ga. App. at 624 (1) (punctuation omitted); *accord Peoples*, 295 Ga. at 55 (4) (c); *Booth*, 293 Ga. at 289 (2) (b).

[60] *Edmonson*, 336 Ga. App. at 624 (1) (punctuation omitted); *accord Peoples*, 295 Ga. at 55 (4) (c); *Booth*, 293 Ga. at 289 (2) (b).

[61] *See Dixon v. State*, 173 Ga. App. 280, 282 (325 SE2d 893) (1985) ("[When] error is committed in the trial of the case in the form of the admission of prejudicial evidence, the verdict cannot carry the same presumption of validity, but the evidence is examined to determine whether the legal evidence is so strong or overwhelming that it is highly probable the illegal evidence did not contribute to the verdict." (citations omitted)), *cited with approval in Booth*, 293 Ga. at 289 (2) (b) n.8.

27

identifying Morris as a perpetrator because he had purchased marijuana from Ball numerous times in the past; that Morris and Ruffin feigned interest in purchasing marijuana from Ball on the night in question; that the shooting occurred right as Ball returned from retrieving marijuana from a bedroom; that Ball recalled watching as Morris and Ruffin appeared to look for items to steal before fleeing the scene; and the State presented evidence connecting Morris to the Sex Money Murder criminal street gang. Accordingly, even if the trial court erred, the error was harmless.[62]

5. Next, Morris argues that the trial court erred in giving certain limiting instructions to the jury with regard to evidence it admitted under OCGA § 24-4-404[63]

---

[62] *See Edmonson*, 336 Ga. App. at 625-26 (1) (recounting other evidence presented by the State, which did not include the questioned Rule 404 (b) evidence, and concluding that even if Rule 404 (b) evidence was admitted in error, it was highly probable that the error did not contribute to the verdict); *cf. Brooks v. State*, 298 Ga. 722, 727-28 (2) (783 SE2d 895) (2016) (holding that evidence of defendant's guilt was sufficient to convict him of murder but was not overwhelming, and holding that erroneously admitted Rule 404 (b) evidence that defendant previously participated in the murder of a state trooper "was extremely prejudicial in the eyes of the jury" and, thus, court could *not* conclude that it was "highly probable that the erroneous admission of the challenged other acts evidence did not contribute to the verdict").

[63] *See* OCGA § 24-4-404 (b) ("Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.").

and OCGA § 16-15-9.[64] Morris takes issue with the fact that, on three different occasions, "the court failed to state the specific purpose the limited instructions were being issued." Once again, we disagree that the trial court committed reversible error.

In the first instance, the trial court instructed the jury that "the next witness is . . . also being offered for a limited purpose that is the same as the last witness, also testifying about the same events. And it's being offered for the same purposes and no other purposes." The instruction was given prior to testimony from the law-enforcement officer who apprehended Morris and Ruffin on the Rule 404 (b) theft charge, discussed in Division 4 *supra*. The officer was the last of two witnesses to testify as to this incident. And as to the first witness, the victim herself, the trial court charged the jury as follows:

> We're hearing . . . from another witness, ladies and gentlemen, that's being offered for a limited purpose. You're about to hear evidence that relates to both . . . defendants and it's being offered by the State for . .

---

[64] *See* OCGA § 16-15-9 ("For the purpose of proving the existence of a criminal street gang and criminal gang activity, the commission, adjudication, or conviction of any offense enumerated in paragraph (1) of Code Section 16-15-3 by any member or associate of a criminal street gang shall be admissible in any trial or proceeding."); *see also* OCGA § 16-15-3 (1) (defining "criminal street gang activity" as "commission, attempted commission, conspiracy to commit, or solicitation, coercion, or intimidation of another person to commit any of [certain thereafter specified] offenses on or after July 1, 2006").

. purposes of proving the charge of possession of a firearm during the commission of a felony, which both defendants are charged with in this case. And as to that charge, it's being offered to show their intent, knowledge or plan.

In the second instance, the trial court instructed the jury that "the same limiting instruction I gave for the last witness applies to this witness. The evidence is being offered solely to show the existence of a criminal gang and you're to consider it for that purpose and for no other purpose." This instruction was given prior to testimony from a law-enforcement officer who worked in the jail division and testified regarding his personal knowledge as to the nicknames and tattoos associated with a specific inmate who was a member of Sex Money Murder. The witness just prior to this officer was also a law-enforcement officer who gave the same type of testimony as to another inmate who was a member of Sex Money Murder. And as to the first witness, the trial court instructed the jury as follows:

> Ladies and gentlemen, once again, this evidence that you're about to hear is being offered for a limited purpose. . . . It's being offered for a limited purpose and . . . this evidence, again, is being—it doesn't—you're going to hear about events that don't have anything to do with either one of these defendants. The evidence is being offered only to show the existence of a criminal street gang and for no other purpose. And you can't consider it for any other purpose.

In the third instance, the trial court instructed the jury that "the same instruction I just gave for the last witness applies to this witness." This instruction was given prior to the testimony of a law-enforcement officer as to an attack that was perpetrated upon a jail inmate by four other inmates, which included Morris and members of Sex Money Murder. The witness prior to this law-enforcement officer was the inmate the officer testified had been attacked; however, in his brief testimony, the inmate denied the attack or making any prior statements that he had been attacked. But prior to the inmate's testimony, the trial court instructed the jury as follows:

> [T]he testimony you're about to hear, I'm going to give you a limiting instruction on that as I did earlier. And this testimony, you're . . . going to hear about some events that involve—they're going to go to the gang charges as to Mr. Morris only and also as to the existence of a criminal gang. And you're—the testimony is limited to that purpose and not to be considered for anything else.

The record reflects that while Morris objected to the admission of the evidence as to each of these witnesses, he did not object to the instructions that were given by the trial court. And as a result, we will review the court's instructions only for plain

31

error.[65] Accordingly, we must determine if the three instructions about which Morris complains on appeal were "erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings."[66]

Our Supreme Court has adopted a four-part test for plain-error review:

First, there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously

---

[65] *See Smith v. State*, 297 Ga. 214, 216 (3) (773 SE2d 209) (2015) (holding that because appellant failed to object or request a different instruction be given, "any challenge to the instruction given could only be reviewed for plain error"); *Bishop v. State*, 314 Ga. App. 830, 832 (2) (726 SE2d 112) (2012) (holding that failure to object to limiting instruction given prior to admission of similar-transaction evidence and in court's final charge resulted in waiver of issue unless appellant could show plain error).

[66] *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011) (punctuation omitted); *accord Wagner v. State*, 311 Ga. App. 589, 594 (716 SE2d 633) (2011) (Blackwell, J., concurring specially).

affects the fairness, integrity or public reputation of judicial proceedings.[67]

Applying this standard to each of the above-quoted instructions, Morris has failed to establish that the trial court committed plain error. Each of the three complained-of instructions was immediately preceded by testimony from witnesses as to whom the trial court gave explicit, clear limiting instructions, and the court then referred back to those instructions. The testimony from the preceding witnesses was relatively brief, making it highly unlikely that the jurors would have forgotten or been confused about the instruction to which the court referred and, thus, unlikely that the instructions affected the outcome of the proceedings. Accordingly, this enumeration of error is without merit.

6. Morris contends that the trial court erred in admitting irrelevant and cumulative hearsay testimony regarding his alleged gang connections. Again, we disagree.

(a) First, Morris argues that the trial court erred in permitting hearsay testimony provided by the State's expert witness. But because counsel did not make a hearsay

---

[67] *Smart v. State*, 299 Ga. 414, 420-21 (3) (788 SE2d 442) (2016) (punctuation omitted).

objection to the expert's testimony, any such objection was waived.[68] Furthermore, as detailed *supra* in Division 2 (c), which addresses Morris's contention that counsel rendered ineffective assistance by failing to object to the expert's testimony, the expert witness did *not* provide hearsay testimony and instead testified from personal knowledge based upon his training, experience, and review of relevant exhibits at trial.

(b) Morris next argues that the trial court erred in admitting testimony by nine additional witnesses. However, he provides no citation to authority in support of his contentions that the testimony by these witnesses was irrelevant, inadmissible, and/or highly prejudicial. Accordingly, he has abandoned these enumerations for appellate review.[69]

---

[68] *See* OCGA § 24-8-802 ("Hearsay shall not be admissible except as provided by this article; provided, however, that if a party does not properly object to hearsay, the objection shall be deemed waived, and the hearsay evidence shall be legal evidence and admissible."). We note, of course, that the new Evidence Code applies to this case because Morris was tried in 2015. *See* Ga. L. 2011, pp. 99, 214, § 101 (providing that Georgia's new Evidence Code applies "to any motion made or hearing or trial commenced on or after" January 1, 2013).

[69] *See In re Whittle*, 339 Ga. App. at 91 (2) (deeming enumeration of error abandoned when appellant provided no citation to authority); *Amaya*, 308 Ga. App. at 463-64 (3), 464 (4) (same); *see also* COURT OF APPEALS RULE 25 (c) (2) ("Any enumeration of error which is not supported in the brief by citation of authority or argument may be deemed abandoned.").

7. Finally, Morris argues that his convictions for criminal attempt to commit armed robbery, aggravated assault, and aggravated battery should have merged for purposes of sentencing. Because we agree that his convictions and sentence for criminal attempt to commit armed robbery and aggravated assault should have merged, we vacate his sentence in part and remand to the trial court for resentencing.

The question of whether offenses merge is a legal question that we review *de novo*.[70] When a defendant is convicted of multiple crimes based upon the same act, "the principle of factual merger operates to avoid the injustice."[71] One crime is included in another when

> (1) [i]t is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the crime charged; or

[70] *Haynes v. State*, 322 Ga. App. 57, 60 (2) (743 SE2d 617) (2013); *McGlasker v. State*, 321 Ga. App. 614, 616 (2) (741 SE2d 303) (2013).

[71] *Gordon v. State*, 334 Ga. App. 633, 636 (780 SE2d 376) (2015) (punctuation omitted); *see also Regent v. State*, 299 Ga. 172, 175 (787 SE2d 217) (2016) ("While an accused may be prosecuted for more than one crime arising out of the same criminal conduct, he may not be convicted of more than one crime arising out of the same criminal conduct [when] one crime is included in the other." (emphasis omitted)).

(2) [i]t differs from the crime charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission.[72]

To answer the question of whether offenses merge, the Supreme Court of Georgia has adopted the "required evidence" test set forth by the Supreme Court of the United States to resolve these situations.[73] Accordingly, when determining whether convictions for multiple crimes merge for purposes of sentencing,

[t]he applicable rule is that [when] the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.[74]

Here, Morris was charged with criminal attempt to commit armed robbery in that he, "with intent to commit theft by taking United States currency and by taking marijuana from the person and the immediate presence of [Ball], did brandish a

---

[72] OCGA § 16-1-6 (1)-(2).

[73] *Drinkard v. State*, 281 Ga. 211, 214 (636 SE2d 530) (2006); *see also Blockburger v. United States*, 284 U.S. 299 (52 SCt 180, 76 LEd 306) (1932).

[74] *Drinkard*, 281 Ga. at 215 (quoting *Blockburger*, 284 U.S. at 304).

firearm, an offensive weapon, at said [victim] and did point said firearm at said [victim]. . . ." Morris was charged with aggravated assault in that he "did make an assault upon the person of [Ball] with a deadly weapon, to wit: a 9mm handgun, by brandishing a firearm at said person, by brandishing and menacing said person with said firearm, and by shooting said person with said firearm . . . ." Finally, Morris was charged with aggravated battery in that he "did maliciously cause bodily harm to [Ball] by seriously disfiguring his colon, his rib, and his chest cavity, members of said person's body . . . ."

First, as to whether the convictions for criminal attempt to commit armed robbery and aggravated assault should have merged, our Supreme Court has previously observed that armed robbery[75] requires "an intent to rob, the use of an offensive weapon, and the taking of property from the person or presence of

---

[75] OCGA § 16-8-41 (a) ("A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon.").

another."[76] And as to whether aggravated assault with a deadly weapon[77] merges with armed robbery, the Supreme Court has held that aggravated assault with a deadly weapon "does not require proof of a fact that armed robbery does not."[78] Indeed, the Supreme Court has concluded that "the assault requirement of aggravated assault is the equivalent of the 'use of an offensive weapon' requirement of armed robbery,"[79] and that the "'deadly weapon' requirement of this form of aggravated assault is the equivalent of the 'offensive weapon' requirement of armed robbery."[80] Thus, there is

---

[76] *Lucky v. State*, 286 Ga. 478, 481 (2) (689 SE2d 825) (2010); *accord Long v. State*, 287 Ga. 886, 888 (2) (700 SE2d 399) (2010).

[77] OCGA § 16-5-21 (b) (2) ("A person commits the offense of aggravated assault when he or she assaults[ ] . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]").

[78] *Long*, 287 Ga. at 888 (2); *accord Hall v. State*, 313 Ga. App. 66, 68 (720 SE2d 181) (2011); *see Lucky*, 286 Ga. at 481 (2) ("Aggravated assault with intent to rob does not contain a provision that is not a fact which must be proved in armed robbery. Both crimes require proof of an intent to rob, and the 'assault' requirement of aggravated assault is the equivalent of the armed robbery requirement that the taking be 'by use of an offensive weapon' since 'use of an offensive weapon' takes place when the weapon is used as an instrument of actual or constructive force—that is, actual violence exerted on the victim or force exerted upon the victim by operating on the victim's fears of injury to the person, property, or character of the victim.").

[79] *Long*, 287 Ga. at 889 (2); *accord Lucky*, 286 Ga. at 482 (2).

[80] *Long*, 287 Ga. at 889 (2); *accord Hall*, 313 Ga. App. at 68.

"no element of aggravated assault with a deadly weapon that is not contained in armed robbery."[81]

In this case, Morris's conviction for aggravated assault should have merged with his conviction for criminal attempt to commit armed robbery because those acts were predicated upon the same act or transaction, *i.e.*, Morris's use of a handgun to overpower and intimidate Ball for the purpose of attempting to rob him of his belongings.[82] Accordingly, the conviction and sentence for aggravated assault must be vacated and the case remanded to the trial court for resentencing.[83]

---

[81] *Long*, 287 Ga. at 889 (2); *accord Hall*, 313 Ga. App. at 68.

[82] *See Long*, 287 Ga. at 886-90 (1)-(2) (holding that convictions for armed robbery and aggravated assault should have merged when they were predicated upon the same course of conduct); *Mullis v. State*, 321 Ga. App. 720, 721-22 (742 SE2d 750) (2013) (holding that convictions for criminal attempt to commit armed robbery and aggravated assault merged because "the aggravated assault arose out of the same 'act or transaction' as the criminal attempt to commit armed robbery"); *Haynes*, 322 Ga. App. at 62 (2) (holding that convictions should have merged when "the aggravated assault and armed robbery . . . were predicated on the same conduct"); *Hall*, 313 Ga. App. at 69 ("[W]hat dictates merger is the fact that both crimes for which [the defendant] was convicted were predicated upon the same conduct[.]").

[83] *See Long*, 287 Ga. at 889 (2) (vacating conviction and sentence for aggravated assault when that count should have merged with conviction for armed robbery, and remanding to trial court for resentencing).

Having determined that the conviction and sentence for aggravated assault must be vacated, we must now determine whether Morris's convictions for criminal attempt to commit armed robbery and aggravated battery should have merged. Once again, armed robbery[84] requires "an intent to rob, the use of an offensive weapon, and the taking of property from the person or presence of another."[85] And aggravated battery[86] requires proof that "the victim was deprived of a member of his body, or that such member was rendered useless or seriously disfigured."[87] Armed robbery requires an "intent to rob," which aggravated battery does not, and aggravated battery requires proof that a victim was deprived of a member of his body or that a member was rendered useless, which is a requirement not contained in armed robbery. Thus, each

---

[84] OCGA § 16-8-41 (a) ("A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon.").

[85] *Lucky*, 286 Ga. at 481 (2); *accord Long*, 287 Ga. at 888 (2).

[86] OCGA § 16-5-24 (a) ("A person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another by depriving him or her of a member of his or her body, by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof.").

[87] *Ledford v. State*, 289 Ga. 70, 73 (1) (709 SE2d 239) (2011) (punctuation omitted).

provision required "proof of a fact which the other [did] not,"[88] and the offenses did not merge.[89]

Accordingly, for all of the foregoing reasons, we affirm in part, vacate in part, and remand to the trial court for resentencing consistent with this opinion.

*Judgment affirmed in part, vacated in part, and case remanded with direction.*

*Reese and Bethel, JJ., concur.*

---

[88] *Drinkard*, 281 Ga. at 215 (quoting *Blockburger*, 284 U.S. at 304).

[89] *See Smashum v. State*, 293 Ga. App. 41, 43 (2) (666 SE2d 549) (2008) (holding that convictions for armed robbery and aggravated battery did not merge when "[t]he evidence needed to prove aggravated battery was not the same as that necessary to establish armed robbery" and "the required evidence was entirely different").